LipscoMB, J.
In the progress of the case and on the trial there were a great many exceptions taken; but they will not be noticed except such as have *228 been presented by the brief of the counsel for the appellant. These ve propose to dlsenss and decide in the order in which they have been presented.
The counsel for the appellant contends that the judgment cannot be sustained ou the ground of a want of tiie proper parties in the suit; that the heirs of Mabry and the heirs of Givens ought to have been made parties; and that without such parties there could be no legal foreclosure of the mortgage. This position is rested for support on the 772d art. of the Digest. The latter part of tiie article, to which reference is made, is thought by counsel to be material. The section is long and it will not be recited. We believe that a fair construction of tiie last clause in the section in relation to malting the heirs parties refers to the first part, in which suits are brought against executors, administrators, or guardians, and that a suit brought against the intestate, whilst living, does not come within its provisions; that a different construction would not be sustained by an adherence to the grammatical structure of the section; and we do not feel authorized to give it a more liberal intendment, so as to embrace a different suit than tiie one expressly mentioned; that this suit having been commenced against the intestate, and the pleading made up before the death of the defendant, there was no necessity imposed by the law of making his heirs parties. The objection is therefore believed to be not well taken.
The second position assumed by the counsel for the appellant is that the trustee could not proceed to foreclose the mortgage until he had received the written request of the cestui que trusts, and he assumes that Campbell and Morris were the only beneficiaries; that until they were heard to complain, nobody else could complain or ask the benefit of tiie trust. It might well be admitted, without prejudice to the rights of the heirs of Mabry, that the trustee could not have proceeded to sell the property conveyed in trust if it had remained where the trust deed liad left it; but when he was prevented by tiie acts of the defendant from executing tiie trust in the specific manner pointed out in it, and had to resort to a suit to foreclose the mortgage and make tiie trust property available to those intended to be the beneficiaries, it could then be enforced by the direction of and according to the rules of the forum to which he had been compelled to resort in securing tiie trust reposed in him.
It is a mistake to suppose that the principal object of the trust was the security of Campbell and Morris, the securities, hut its main object was to pay tiie debt due from' the defendant to the estate of Mabry, and thereby, as an incident, to secure Campbell and Morris, who were the defendant’s securities for liis faithful administration of the estate of Mabry.
Tiie payment of tiie debt acknowledged in the deed to be due and the payment of which was declared to be the object of the trust was its chief object. The trustee could at any time after tiie time agreed upon in the deed as the time of payment of the acknowledged debt, on tiie intervention of anything that prevented it from being executed in the manner stipulated, resort to the aid of the courts for a foreclosure of the mortgage and carrying out the object of the trust, the payment of the debt. The intervention here was conclusive in defeating tiie execution of the trust, in its terms, by the removal of the property conveyed before the day of payment, and before, by its terms, Campbell and Morris had authority to request the trustee to proceed in its execution. This act of the defendant, in violating tiie faith lie had pledged and removing the property from the jurisdiction aud place where alone it could have been executed in tiie terms stipulated, superseded the necessity of waiting the direction of Campbell and Morris; and a request that the trustee would proceed to sell as stipulated by the trust deed would have been idle and fruitless. Under such circumstances, the trustee having a due regard for the objects of the trust, not only liad a right but it was his duty to take such lawful measures as would most effectually aid in carrying out tiie objects of the trust by a suit on the mortgage. But the object of the trust being for the benefit of the heirs of Mabry, they could have resorted to it for payment liad there been a failure from any cause in its execution in 1,iie mode stipulated, and they could not be *229 required to look to the securities on the administration bonds; and it is in this aspect wholly immaterial whether the suit was prosecuted at the instance of Campbell and Morris or not.
A direct refusal on their part could not have defeated the right, and it is true that the trust was merely for their security. A fair construction of the trust deed shows that that was only to be an incident that followed tlie payment of the debt in this way, for which they were bound.
Tlie third point presented isas to tlie authenticity and legal effect of the transcript of the record of the County Court of Knox county,'Tennessee, and a great portion of the argument of tlie appellants was directed to this point. We believe that this argument was based upon an entire misconception of the deed of trust. It is in the deed of trust admitted that the sum of sixteen thousand five hundred dollars is due from the defendant; there is, however, a provision in the latter part of the trust deed that evidently was intended for iiis benefit if, on a settlement with the clerk of the County Court of Knox county, Tennessee, it should appear that lie was entitled to credits that would diminish the amount, lie was to have the advantage of such allowance. It is in the part providing for a defeasance or satisfaction that this provision is found, viz: “But if the said Givens shall in good faith pay the within-named debt and interest, or so much of it as may be found due on a settlement with the County Court clerk of Knox county, Tennessee.” It is therefore very clear that tlie settlement with the clerk could not add to or increase the amount for which the security was given, but it might diminish it. This placed the laboring oar in the hands of the defendant; if he could show before the time of payment stated in the deed that it was less than the amount agreed to be paid, lie would be credited therewith; but if such showing was not made the deed could be executed. The plaintiff was not required to procure that settlement for him; and therefore, whether it was legally authoritative or not, or what was its legal effect, did not rest on the plaintiff to show, and, as offered, it did not increase the amount of defendant’s liability.
We have not given the question of tlie authenticity of the transcript as critical an examination as we would have done had we believed that it was in any way material to the plaintiff, or could have injuriously affected the defendant; but it docs not seem liable to tlie objections taken' to it, and iiad it been necessary to tlie interest of either party, it might have been used; but as it did not, and could not, under the construction we have given to the deed, affect the interest of the defendant, whether it was properly authenticated or not. we shall therefore refrain from expressing any decisive opinion on it.
The fourth point made is to the admissibility of the evidence, taken by interrogatories, of tlie witness Pate, on the ground that he had been the guardian of some of the heirs of Mabry, defendant’s testator. The witness, in iiis answers, says that he had been guardian, but had resigned in 1844; that he had never received any money from the defendant as guardian. The interest is supposed to be in this, that as guardian for the minors lie might be called upon to account for the money lie had received as such guardian, and it would be his interest to show that amount to be as small as possible; if he had received nothing he was liable for nothing. This is putting the interest of the witness upon too many contingencies, and all supported by mere remote possibilities. It would not affect Iiis competency; it would, at most, only go to his credibility, and there was no error in admitting- it to go to the jury.
The last point presented is that tlie court erred in awarding execution in this case.
The counsel seems to place great confidence in this position, and considers it conclusive, and supposes that he is fully sustained by Article 11GS of tlie Digest. It is as follows, i. e.: “That any creditor of tlie estate of a deceased person, holding a claim secured by a mortgage or other lien which has been allowed and approved or established by suit, may obtain at a regular term of the court, from the chief justice of the county where the letters testamentary or of administration were granted, an order for the sale of the property upon Which he lias such mortgage or other lien, or so much of said property as may *230 be required to satisfy such claim, by making his application in writing, and having a copy thereof served upon the executor or administrator, with a citation requiring him to appear and answer such application.” This article is the 59th section of an act passed 20th March, 1848, entitled an act to regulate proceedings in the County Court pertaining to estates of deceased persons, and if it stood alone would seem to be broad enough to embrace all cases of specific liens; but when taken in connection with another statute regulating proceedings in the District Courts, it will be clear that it does not do more than it assumes in its title — regulate proceedings in the County Court.
Art. 772 of the Digest, which is the 118th section of the act called the District Court act, and is entitled “An act to regulate proceedings in the District Court,” passed May 13th, A. D. 1S4G, provides what shall he done when a suit is against an executor, administrator, or guardian, for the recovery of money due from or damages incurred by their testator, intestate, or ancestor, if tlie judgment should be against them- — that the judgment shall be, “that the plaintiff recover his debt or damages, as the case may be, and costs to be paid in due course of administration; and no execution shall issue on such judgment..” Tlie last clause of tlie section, and tlie one having a more particular bearing on the question before ns, is as follows, i. e. : “ When the suit is instituted for the enforement of a specific lieu on personal property, the judgment shall be that tlie plaintiff recover liis debt and damages and costs,'and" that tlie property subject to such lien shall be seized and sold by tlie sheriff if it can be found, and proceeds of such sale shall be applied to tlie judgment and costs, and if there be any excess after such payment, the same shall be paid to the defendant.”
Tlie provision of law expressed in each of the acts to which we have referred - and cited is in force, and both binding and obligatory if there is no repug-nancy, and we can perceive none. Both are binding and obligatory in their proper sphere of action, and tlie titles of tlie acts to which they belong clearly define what that is — one in the County Court and tlie other in tlie District Court. If the record from the District Court only Axes the debt or damage, and not the lieu claimed, then that lien will bo ascertained and enforced under the law regulating proceedings in tlie County Court; but if tlie proceedings in tlie District Court not only fixes tlie amount of the debt or damage but also tlie lien, then the lien is enforced under the provisions of tlie law regulating proceedings in the District Court. In this view of tlie two acts, which we believe to he correct, there is not the slightest repugnancy, and tlie judgment and decree of tlie District Court in tlie case before us is ill strict conformity of tlie law governing that court. The objection, therefore, is not sustained. 1 have never known a case presenting,so little difficulty in law in which there was so profuse an expenditure of paper and ink in tlie formation of tlie record ; it Alls two hundred and forty-six pages of foolscap, in a case where tlie deed of trust on which it was brought preseuts a plain and perspicuous chart for direction as to its objects, readily comprehensible to tlie most ordinary capacity. The judgment is affirmed.
Judgment affirmed.