46   141
75    14
46   141
79   497
46   141
81    70

## P. J. HENDRIX v. Q. J. NUNN ET AL.

1. TRUSTEE IN INVITUM.—It is a common and familiar application of "their remedial justice" for courts of equity to force upon the conscience of a party the duty of a trustee in regard to property which has been acquired by artifice or fraud, and where, either from the character of the property or the circumstances under which it is acquired or held, it would be against equity to permit such party to hold it except as trustee.

2. SAME.—The cases where such relief is granted are, generally, where there has been some breach of duty or want of good faith and fair

dealing on the part of the person acquiring the property, or of him from whom or under whom he has obtained it, of which he has actual or·constructive notice; or, where the property has been acquired or possession of it taken on the assumption of a trust character, or under the belief by those with whom the transaction is had, or by reason of which it was acquired or possessed, that it was taken or acquired in trust; or, where it has been obtained by some undue influence.

3. SAME.—See this case for allegations held insufficient to charge defendant as such trustee.

4. SAME.—See facts held insufficient to authorize such relief against the defendant.

5. FRAUD.—Allegations of fraud must specify the acts insisted on as fraudulent.

APPEAL from Wood. Tried below before the Hon. Z. Norton.

On the 9th of February, 1850, a certificate for a league and labor of land, No. 1421–1520, issued to Charles T. Stanley. On the 27th of December, 1851, Stanley mortgaged said certificate to Larkin Hendrix and B. F. Pace. On the 8th of October, 1853, Stanley had surveyed by said certificate one league of land in Wood county; but whether the field-notes were returned to the General Land Office is not shown. The land so conveyed was covered by an older valid claim, having been titled to William Barnhill October 14, 1835.

In 1855 suit was brought by Hendrix and Pace against Charles T. Stanley to foreclose their mortgage on said certificate. During the pendency of this suit, in 1856, Stanley died testate, and by his will, which was probated in Wood county, the league of land in Wood county, surveyed under said certificate, was bequeathed to his wife, Sarah Stanley, who was appointed sole executrix. Sarah Stanley gave bond and qualified, and at the February Term, 1857, of the District Court, made herself a party defendant in said suit of Hendrix and Pace *v.* Charles T. Stanley, being cause No. 126.

At the August Term, 1857, of the District Court, judgment was rendered in said cause in favor of Hendrix and Pace and against Sarah Stanley, administratrix of Charles T. Stanley, deceased, for $1,273.02½, and foreclosing plaintiff's mortgage

on said certificate, ordering the same to be sold as under execution.

On the 19th of October, 1857, an order of sale issued on said judgment, directed to the sheriff of Travis county, and said sheriff levied upon said certificate, and sold the same as under execution to R. M. Johnson and Larkin Hendrix for $476.20, which amount was credited upon said judgment. The sheriff executed a deed, and delivered the certificate to Johnson and Hendrix.

One labor of said certificate had been sold by Stanley before executing the mortgage to Hendrix and Pace.

In February, 1858, the heirs of William Barnhill, who held the superior title to the land in Wood county, brought suit in the District Court of Wood county against their co-heirs for partition, and against Sarah Stanley, J. M. Lloyd, and Thomas Etheredge as trespassers. Sarah Stanley was served with citation in October, 1858, and appeared by counsel and answered, said suit being No. 264.

At the Spring Term, 1860, Larkin Hendrix intervened and had himself made a defendant, claiming title under the Stanley certificate.

On the 12th of March, 1867, R. M. Johnson conveyed to Larkin Hendrix all his interest in said certificate. At the Fall Term, 1867, of the District Court, a judgment was rendered in said cause No. 264, adjudicating the rights and interests of the several parties in and to the land and the said Stanley certificate, and ordering partition.

Partition was made, and reported, and at the Fall Term, 1868, a final judgment was rendered in the cause, giving Sarah Stanley one hundred and sixty acres of land, giving the land now sued for to Larkin Hendrix, and dividing the Stanley certificate between Hendrix and the heirs of William Barnhill. Thus matters were on the 24th day of September, A. D. 1873, when appellees instituted suit in the District Court of Wood county against Larkin Hendrix. The petition charged that Charles T. Stanley, at his death, was the owner of a

headright league and labor of land certificate, which, on October 8, 1853, he had located on lands in Wood county; that the survey had been made thereon, and the field-notes, with certificate, duly returned to the General Land Office.

That said location was community property of the said deceased and his widow, Sarah Stanley, and plaintiffs claim as heirs of said Charles T. and Sarah Stanley.

That on October 1, 1858, suit for partition was brought by part of the heirs of William Barnhill against their co-heirs, Lloyd and Mrs. Sarah Stanley, being No. 264.

That in this suit, May 16, 1867, an agreement was made between the heirs of William Barnhill and Hendrix, dividing the land so covered by the Stanley certificate, the agreement being to the effect that Hendrix was to be equally interested in the land held by the Barnhill title, and that the Barnhill heirs were to share equally with Hendrix in the Stanley league certificate—protecting, however, Lloyd and Mrs. Stanley in their improvements, &c.; that thereafter judgment was rendered, a commission appointed to make partition, whose report was confirmed, in which 2,100 acres of the Barnhill land (also covered by the Stanley location) was adjudged to Hendrix, of which, however, 235 acres were allotted to Lloyd and 160 acres to Mrs. Sarah Stanley.

That at the rendition of this judgment Hendrix had no title or interest in the Stanley certificate, nor in the survey made therein, and that " all his pretensions of right thereto and his actions therein were in fraud of the rights of petitioners."

Plaintiffs claimed all the land set apart in the partition to Hendrix, except that allotted to Lloyd and Mrs. Sarah Stanley, and one half of all lands secured by the Stanley certificate elsewhere; also $1,600, the alleged value of the land wrongfully conveyed by Hendrix to Lloyd.

By amendment, June 22, 1874, plaintiffs alleged that at the time Hendrix assumed to control the said Stanley certificate he had no right or title thereto, nor had he subsequently

acquired any right therein, or to the land located by said certificate; and that all his (defendant's) acts in that behalf were fraudulent as to these petitioners, and in law and equity are held and deemed to have been acts done in trust for petitioners and their use and benefit. This amendment contained a description of lands located by Hendrix by virtue of the Stanley certificate, for half of which judgment was asked.

By further amendment, February 26, 1875, plaintiffs alleged that their mother, Sarah Stanley, up to her death, was induced, by the false and fraudulent representations of Hendrix, to believe that he had a good title to the Stanley certificate and land located by virtue of it; that the false and invalid claim of Hendrix was fraudulently concealed from Mrs. Sarah Stanley during her life, and from plaintiffs until a short time before the filing of the suit herein; that plaintiffs reside out of the county, have little education or experience in affairs, no legal knowledge, and did not know how to help themselves against the fraudulent acts of Hendrix; that Hendrix was a shrewd and unscrupulous man, and had the ability to make his neighbors believe that he owned the said property of plaintiffs which he had in possession, from which they were discouraged from investigating their rights in the same; that he declared everywhere in the region in which he and plaintiffs resided, that he had a good title to said property; and that plaintiffs never did discover the fraud of Hendrix " until they had a conversation with Winston Banks, one of the attorneys for plaintiffs in this cause, three or four months before the institution of this suit."

The defendants demurred and excepted to the sufficiency of the petition, pleaded a general denial, statute of limitations, suggested improvements in good faith, and expenses about the property in locating the certificate, &c.

The jury found the following verdict: " We, the jury, find for the plaintiff all the lands claimed by plaintiffs lying in Wood county, except the Lloyd tract; also all lands claimed

10

by plaintiffs in Cooke and Clay counties, except one fourth undivided interest in said lands.

"We, the jury, find for defendant the Lloyd tract of land in Wood county, in lieu of the value of improvements made in said county on lands claimed by plaintiffs by said defendant; also one fourth interest in the land located in Cook and Clay counties, as compensation for locating and other expenses."

Upon which, judgment was rendered. Motion for new trial was overruled, and defendant appealed.

*Payne & Putman,* for appellants, cited Kerr on Frauds, 365; State *v.* Galveston City Co., 38 Tex., 12; Morton *v.*Welborn, 21 Tex., 774; Roberts *v.* Frisby, 38 Tex., 219.

*Banks & Crow,* for appellees, cited 2 Story's Eq. Jur., §1255, 1262, 1265; Barziza *v.* Story, 39 Tex., 355; Spurlock *v.* Sullivan, 36 Tex., 511; Cunningham *v.* Taylor, 20 Tex., 129; Robertson *v.* Paul, 16 Tex., 472; Boggess *v.* Lilly, 18 Tex., 205; Ripley *v.* Witbee, 27 Tex., 14; Anding *v.* Perkins, 29 Tex., 354; Emerson *v.* Navarro, 31 Tex., 340; Robinson *v.* Davenport & Tinsley, 40 Tex., 337.

MOORE, ASSOCIATE JUSTICE.—The theory upon which this suit was brought is, that Larkin Hendrix, appellant's testator, took the land set apart to him by the decree of the District Court in the case of "Barnhill's Heirs *v.* Barnhill's Heirs, as a trustee *in invitum* for Sarah Stanley, the widow, legatee and executrix of Charles T. Stanley, deceased, or for her and plaintiff's, appellees, in this court, as the legal and equitable owners of the headright certificate for a league and labor of land, issued to said Charles T. Stanley. It was not the purpose of this suit to review and impeach or annul the judgment in the case of Barnhill's Heirs *v.* Barnhill's Heirs, and to show that plaintiffs had the superior title to the land granted to William Barnhill by virtue of its survey on the Stanleys certificate, or to assert a title to the land subse-

quently appropriated by this certificate, as the owners of it, by inheritance from their mother, or under the recommendatory trust in their father's will, if such is its proper construction. Whatever imperfections there may be in this judgment, or whatever rights appellees might have heretofore or may hereafter assert to either of these tracts of land under the certificate issued to their father, they are not in question in this case. Appellees, by their pleading, in effect admit the validity of the Barnhill title, and the finality and correctness of the decree, and base their right to relief solely upon it and the fact that appellant's testator took, as they assert, the land set apart to him by the decree of the court as constructive trustee, *de son tort*, for themselves or mother, as the *bona fide* owner of the Charles T. Stanley certificate. Unless, therefore, the averments in the petition and amended petitions are sufficient so maintain this claim, and the evidence warrants the verdict against appellant, the action of the court in overruling the exceptions to the petition, and the refusal to grant a new trial, were erroneous. A careful examination of the record satisfies us that on both of these grounds, if no others, the judgment must be reversed.

Courts of equity, as says Judge Story, have adopted principles in regard to fraud, whether constructive or actual, exceedingly broad and comprehensive in the application of their remedial justice, and, especially where there is fraud concerning property, they will often interfere and administer a wholesome and sometimes even a strict justice in favor of innocent persons, who are themselves without fault in the transaction. (Story's Eq. Jur., sec. 1265.) And it is unquestionably a common and familiar application of "their remedial justice" for courts of equity to force upon the conscience of a party the duty of a trustee in regard to property which has been acquired by artifice or fraud, and where, either from the character of the property or the circumstances under which it is acquired or held, it would be against equity to permit such party to hold it, except as a trustee.

It is evidently impossible to announce a formula which is applicable to, and that will embrace, every conceivable case in which a court of equity will hold a party to be a constructive trustee. It will be found, however, upon examination, that the cases to which this doctrine has been held applicable in the "remedial justice" of courts of equity, are generally cases where there is some breach of duty or want of good faith and fair dealing on the part of the person acquiring the property, or of him from whom or under whom he has gotten it, of which he has actual or constructive notice;. or where the property has been acquired or possession of it taken on the assumption of a trust character, or under the belief by those with whom the transaction is had, or by reason of which it was acquired or possessed, that it was taken or acquired in trust; or where it has been gotten by some undue influence. (2 Wash. on Real Prop., 447, 451; Hill on Trustees, 242, 246; Story's Eq. Jur., sec. 1255, *et seq.;* 2 White & T.'s Lead. Cases in Eq., vol. 2, part 1, 549.) But certainly it would be altogether fallacious to suppose that in any case in which there was fraud, even though fully sufficient to annul the contract or warrant the granting of other appropriate relief, that the party guilty of the. fraud can be regarded or treated as strictly a trustee, as appellees are in effect seeking to do in this case. To so hold, would abrogate the statute of limitations, and virtually reopen and render of no avail in many instances the previous judgments of the courts.

When the plaintiff seeks to impose upon the defendant the character of a trustee *in invitum,* evidently he must allege in his petition facts from which the court can see that equity and justice require that it should force upon defendant's conscience the performance of that which is demanded of him. The facts alleged in the original petition, from which it is insisted appellant's testator took the lands decreed him in the Barnhill suit as a trustee, are in substance: that without residing on it, and without alleging any right, title, or interest in the land surveyed for Charles T. Stanley in his lifetime,

he had himself made a party defendant; that prior to the making of the agreement for the compromise of said suit, and without petitioner's consent or the consent of said Sarah Stanley, he illegally conveyed a part of said land to J. M. Lloyd; that at the making of said agreement, and at no time previous thereto or afterwards, was said Hendrix in any way interested in said Charles T. Stanley's certificate, or the survey made by virtue thereof, and all his pretensions of right thereto were in fraud of the rights of petitioners.

Evidently, it is not shown by these averments that any fraud was practiced by Hendrix on plaintiffs, or their mother, who was a party to the suit. There is merely a bald assertion of fraud, as an inference or conclusion, instead of the statement of facts showing fraud, as is unquestionably necessary. The most that can be said is, that it may be inferred from these averments that there may have been irregularities in the proceeding, or error in the judgment, but as Mrs. Stanley was a party in this case, and plaintiffs' action is founded upon the judgment, this is of no consequence here.

The obvious deficiency of the original petition, in alleging the facts relied upon, to charge Hendrix with fraud, and justify the court in holding him to have taken the land decreed to him in trust, is evidently not cured by the amended petitions. In the first amendment, plaintiffs merely assert that Hendrix, at the time he first assumed to control the lands located and surveyed by virtue of the Stanley certificate, had no legal interest, title, or claim to such land or said certificate, nor had he any right, title, or claim thereto from that time hitherto, and that all his acts were fraudulent as to petitioners.

And, in replication to defendants' answer, plaintiff says that Hendrix took possession of the land and certificate mentioned in defendants' first and second amended answers, fraudulently, and under color of a pretended title, which was wholly invalid; that they had no knowledge of such fraudulent and illegal acts, and supposed the pretended claim of the

defendants to be valid until some three months before the commencement of their suit.

Again, they say: the said Sarah Stanley, up to the time of her death, was induced, by false and fraudulent representations of Hendrix, to believe that he had a good title to the Stanley certificate and the land surveyed by it, and that the false and invalid claim, under which he assumed to possess and control the same, was fraudulently concealed from her during her life, and from plaintiffs until the time previously alleged. But what these representations were, or how his claim to the certificate and land was concealed, is not stated.

In the last amended petition and replication they say that Hendrix was an unscrupulous man, and possessed the ability to make the neighbors, among whom he and they lived, believe that the property of plaintiffs, which he had in possession, was his, and that they were thereby discouraged and prevented from investigating their right to the same, and that said Hendrix declared, everywhere in the region in which he and plaintiffs lived, that he had a good title to said property, thus negativing the averments of the original petition, that Hendrix had caused himself to be made a party to the Barnhill suit, without asserting any interest or title to the land, and that he should therefore be held to have taken the land decreed to him as trustee, while, from this averment in their replication, it plainly appears, if he had so taken it, he nevertheless held in open and notorious repudiation of the trust, which would have justified the court in sustaining the exception to the petition setting up the statute of limitations.

An examination of the statement of facts shows a more glaring deficiency of evidence to establish the essential facts necessary to support the verdict than does the petition of the averments requisite to maintain the action.

On the 27th of December, 1851, Stanley sold one thousand acres of land, described as located by virtue of his headright certificate to Hendrix and Pace, for the sum of seven hundred and fifty dollars; and to secure the repayment of this

sum, in the event he should be unable to make a valid title to the land sold, gave them a mortgage upon said certificate. Whether the land sold to Hendrix and Pace was a part of the land surveyed by Stanley which had been previously granted to Barnhill is not shown, but as this survey was not made until October 8, 1853, it cannot be inferred that it was. At all events, Hendrix and Pace brought suit against Stanley for a breach in the condition of his bond, and to foreclose the mortgage on the certificate prior to the Fall Term, 1855, of the District Court of Wood county; and Stanley having died testate after the institution of the suit, his executrix, Sarah Stanley, who, if she did not take the absolute title to said certificate by his will, certainly held it for the settlement and discharge of said Stanley's debts, voluntarily appeared and made herself a party; and at the Fall Term, 1857, of said court the cause came regularly to trial, when plaintiffs recovered a judgment, on the verdict of a jury, for twelve hundred and seventy-three dollars and two and a half cents, and for the foreclosure of their mortgage on said certificate, and that an order issue to the sheriff of any county in the State to levy upon and sell the same.

On an order of sale issued in obedience to this judgment, the certificate was levied upon and sold by the sheriff of Travis county, where it seems to have been previously returned, with the field-notes of the land upon which it had been located and surveyed in 1853.

It is unnecessary for us to discuss the validity or invalidity of this judgment, or to determine whether the proceedings under it, by which Hendrix claimed to have acquired the title to the certificate, or the land upon which it had been surveyed, were valid or not. If we concede that the certificate was not subject to the levy while on deposit in the General Land Office, or that it ceased to be a chattel when surveyed, although the land to which it was sought to be applied had been previously appropriated, and that the title to it could only pass by a sale of the realty to which it was

attached, (if it can be held to have attached to it for any purpose,) and although it should also be admitted that the judgment on the mortgage should have been certified to the Probate Court, instead of ordering a sale by the sheriff, as had been decided a short time before the judgment was rendered, in the case of Robertson v. Paul, 16 Tex., 472, overruling what seems to have been the previously established practice, (Given's Administrator v. Davenport, 8 Tex., 451,) still, however clearly it may appear that this judgment and the sale under it was wholly inoperative upon the title to the certificate and the land upon which it had been located, it certainly cannot be said that it was fraudulent to purchase at a sale thus made, in pursuance of the judgment of the court, or in claiming to have acquired thereby a valid title to the certificate, or the land to which it had been applied; and especially when a valuable consideration had been paid for it, which went to satisfy the mortgage with which it was charged by appellees' father.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.