OHIO CULTIVATOR COMPANY v. PEOPLES NATIONAL BANK ET AL.

Decided February 21, 1900.

**1. Trust Deed for Creditors—Fraud—Beneficiary's Right of Action.**

Where the trustee in a deed of trust for creditors was fraudulently induced by other creditors therein secured to sell the trust property for much less than its value, another beneficiary in such deed, who was thereby prevented from realizing on his debt, can maintain an action against such trustees. and the creditors fraudulently conspiring with him, to charge them with the value of the goods above the amount the trustee had so received.

**2. Same—His Right Against a Creditor Holding Collateral Security.**

Such beneficiary may also recover of a creditor secured by the trust deed who held collaterals, and who, after notice that plaintiff's claim would be defeated thereby, surrendered such collaterals back to the debtor, such amount as plaintiff was damaged in consequence thereof.

**3. Same—Parties Not Necessary, and Others Properly Joined.** .

In an action by a beneficiary against the trustee and certain other creditors secured by the trust deed, for damages sustained by reason of their fraud and conversion of the trust property, it is not necessary that other beneficiaries who did not participate in the fraud and conversion should be made parties; but the creditor who, conspiring with the trustee and the others in the conversion of the trust property, surrendered the collaterals he held, was properly joined as a defendant.

**4. Same—Beneficiary Can Not Attack Other Secured Claims.** ˙

A beneficiary in a trust deed for creditors who claims under it can not attack another claim secured by it as being fictitious. .

**5. Same—His Right to Buy and Sue Upon Other Secured Claims.**

A beneficiary in a trust deed who sues the trustee and certain other secured creditors for fraud and conversion may include with his original claim the secured claims of other beneficiaries which he has since purchased.

**6. Same—Facts Relevant as Showing Fraud.**

In such an action by the beneficiary the fact that the trustee was offered by an outside party a higher price than he sold the goods for, and the fact that the purchaser from him afterwards sold the goods for much more than he paid the trustee for them, were matters that could be pleaded and considered in determining the issue of fraud.

**7. Same—Conduct of Trustee.**

So, the fact that the trustee, who was himself a preferred beneficiary and whose claim was alleged to be fictitious, accepted only 50 per cent of his claim, and surrendered the trust property to others, could also be pleaded and shown as relevant upon the issue of fraud.

**8. Same—Pleadings—Exceptions Well Taken.** .

In such action by the beneficiary, where the trustee has become insolvent and nonresident, it is enough to so allege, and special exceptions are properly sustained to pleading which set out the details of his failure.

**9. Same—Pleading Fraud.**

In pleading fraud the acts constituting fraud must be specifically alleged.

**10. Practice—General Demurrer Sustained—Amendment.**

Where a general demurrer to plaintiff's petition was sustained, his failure to amend so as to meet the rulings of the trial court sustaining special demurrers, will not deprive him of his right to have a reversal of the judgment.

Appeal from Ellis. Tried below before Hon. J. E. Dillard.

*S. C. McCormick,* for appellant.

*T. H. Collier* and *Templeton & Harding,* for appellees.

RAINEY, Associate Justice.—The appellant (plaintiff below) instituted this suit in the court below, and defendants interposed a general and sixteen special demurrers to the petition, all of which having been sustained by the court, this appeal is prosecuted. The petition is quite lengthy, and we will only reproduce here a synopsis thereof taken from appellant's brief, to wit: "The said company is a corporation created under the laws of Ohio; that the matters embraced in the suit grew out of interstate commerce, and that it had a permit from the Secretary of State of Texas to do business in Texas; that on January 9, 1897, Z. T. Williams executed said trust deed conveying to Creager said stock of goods, situated in Ennis, Texas, in trust, and for the purpose of Creager's taking possession thereof, and, after inventorying the same, selling the same 'for cash in such quantities and manner as to him might seem best, having in view the realization of the greatest amount therefrom,' and from the proceeds of sale paying, in the first place, all taxes and rents secured by lien on the goods and $250 to Templeton & Harding, and the necessary expense of executing the trust and reasonable compensation to him, Creager, and then paying, first to Creager $3150, evidenced by two notes, dated March 26, 1896, and providing for 10 per cent attorney fees, and credited with $337.50, October 15, 1896, and to the said Peoples Bank $1870.67,—these two on an equal footing; and second, to J. W. Taylor $35, to Charles Taylor $25, to A. S. Cochran $46, on an equal footing; third, to Tenison Bros., $300; fourth, to B. W. Milam, $100; fifth, W. G. Giddings, $200; sixth, to Kendall & Allen $175; seventh, to White Hardware Company, $243; eighth, to H. Wetter Manufacturing Company, $50; ninth, to Ohio Cultivator Company, $548, with interest at 8 per cent from October 15, 1896. That said instrument, which styles itself a mortgage, states that it is made to secure the said debts in the said order named; that after the payment of said debts it was to cease and determine, and the surplus or goods remaining were to be turned over by Creager to Williams.

"Creager accepted the trust, filed the mortgage for record, took possession of the goods on January 10, 1897; that on the same day all the above named persons, firms, and corporations whose claims are so pro-

vided for, severally accepted the said mortgage; that said claim of Creager was simulated and fictitious; and that if not entirely fictitious, it was fictitious to the extent of more than one-half; that if said notes in his favor ever evidenced a real debt, such debt had been reduced by payment to an amount not to exceed $1300; that said mortgage was made by Williams and accepted by Creager with intent to defraud the creditors of Williams, and the same was as to the said collusive and pretended debt of Creager fraudulent and void; that said fictitious debt was inserted for the benefit of Williams, and upon a secret agreement that the amount of the same was to be paid to Williams by Creager, when the latter should collect it out of the goods; that defendants had notice of all this; that Williams was insolvent, had no property except said stock of goods, and was largely indebted.

"That, at the time of the execution of the mortgage and before, the Peoples Bank held by transfer from Williams numerous promissory notes as collateral security, securing its said claims mentioned in the mortgage,—said notes being notes previously executed to Williams by his customers; that said notes amounted to $981, principal, bore interest at 10 per cent, and were secured by mortgages on chattels; that said notes were solvent and with reasonable diligence collectible to the last dollar; that a list of them is annexed to the petition; that the said six claims, last mentioned in the mortgage, were all valid debts, owing by Williams, and two of them, to wit, that in favor of Ohio Cultivator Company and that in favor of Witte Hardware Company, were for goods sold to Williams, and some of which formed a part of the stock embraced in the mortgage. That on January 12, 1897, said cultivator company and said hardware company, after each of them had each theretofore accepted said mortgage, were informed that said pretended debt in favor of Creager was fictitious and collusive, and the mortgage therefore void as to it, and that said bank held said collateral notes; and that on said day they gave notice in writing to the bank and to Creager to this effect, to wit, that they, said cultivator company and hardware company, were bona fide creditors of Williams in the amount of their said debts mentioned in the mortgage; that the said claim in favor of Creager therein was fictitious in part at least; that said bank held said collateral notes securing its debts; that it would be unlawful for Creager, as trustee, to pay off his said fictitious claim out of the proceeds of the sale of said stock, as such payment would cause them to lose their said debts, Williams being insolvent; and said notice further stated that they, said cultivator company and hardware company, demanded that Creager should not pay, out of the proceeds of said stock, said fictitious debt in favor of himself or any part of it; and gave notice that they would bring suit to establish the facts stated in the notice, and obtain payment in full of their said debts out of the said stock, and to compel said collateral notes to be exhausted by the bank in satisfaction of its debt; and that said written notice was on said day also read by Moore, Teneson, and Williams.

"That an inventory of said stock had been made at cost price, exclusive of carriage, and footed up over $10,500; that it cost upward of $10,000, and was worth $10,000. That on January 11, 1897, one Tatum, a hardware man of Corsicana, came to Ennis and offered Creager for said stock 55 cents on the dollar, which offer, by reason of the interference of Williams, Creager did not accept, but promised Tatum to telephone to him to come up again and close the trade, if Williams himself did not buy back said stock; that on the afternoon of the following day, January 12th, between 2 and 3 p. m., Creager telephoned to Tatum that he, Tatum, could have the said stock at his said offer, and requested him to come to Ennis on the next train, due at Ennis between 5 and 6 p. m.; that Tatum accepted the said offer of Creager, left Corsicana at 4:40 p. m., reached Ennis in an hour, and found that others had bought the stock, and that Creager was gone. That in the meantime (that is, between 2 and 3 p. m. and 5.40 p. m. on said day), defendants, fearing that said cultivator company and hardware company might by suit prevent the payment of said fictitious claim of Creager out of the stock and compel the bank to realize on said collateral notes, or that they might have a receiver appointed to do so for the benefit of the preferred creditors, and fearing that if Creager sold the stock to Tatum or to anybody other than Moore and Teneson, said fictitious debt would not be paid and Williams would not get back said collateral notes, conspired and confederated to enable Creager to receive $1500 on his said fictitious claim, to restore to Williams said collateral notes, to prevent the sale of the stock to Tatum, to force Creager to accept $1500 on his said fictitious claim, to prevent competition in the sale of the goods, and to cause the said goods to be turned over to Moore and Teneson; that defendant bank, Moore, and Teneson, believing Williams to have influence over Creager, got him, Williams, to join in said conspiracy; that defendants, by threats to attach said goods, prevented said sale to Tatum, and induced Creager to turn the goods over to Moore and Teneson; that defendants so conspired with intent to defraud the creditors of Williams; that, at about 5 p. m. on January 12th, it was agreed between said conspirators and Creager that he should receive $1500 on his fictitious claim and retire as trustee, turn over the goods to Moore and Teneson, and let them pay $2820 on preferred claims in the order mentioned in the mortgage, but so as to include the claim of Teneson Bros.; that the bank was about to pay the $1500 to Creager, when they concluded to go to Waxahachie to see attorneys and have papers drawn, and they went there at 5 p. m.,; that plaintiff has not positive knowledge of what papers were drawn at Waxahachie, never having seen them, nor been informed of the contents thereof by either Creager or the other parties thereto, and said papers having been kept back and concealed; but that only $1500 cash was paid, and that was paid to Creager on his fraudulent claim for his own use, with notice that the other preferred creditors were entitled to have all the proceeds of the stock paid

on their claims to the exclusion of Creager's; that a transfer of the goods was made by Creager to Moore and Teneson, in consideration of said $1500 paid to Creager for his use, and the promise of Moore and Teneson thereafter to pay $2820 on other preferred claims; and Moore and Teneson took possession of the goods.

"That said transfer was made with the intent, for the purpose, and through the conspiracy aforesaid; that in said intent to defraud Williams' creditors, Creager and Moore, Teneson, the bank, and Williams all participated; and that as to said preferred creditors, including plaintiff, said transfer was fraudulent and void, passed no title, and rendered said transferees and their said confederates liable severally and jointly as constructive trustees.

"That said mortgage authorized Creager to sell said stock for cash and not otherwise, and pay said claims, and turn over the surplus to Williams; and that said transfer of the goods to Moore and Teneson for $1500 cash to Creager for his use, and the assumption by Moore and Teneson of about $2800, as above stated, was in violation of the terms of the mortgage, without authority, ultra vires, null and void, passed no title to Moore and Teneson, in whose hands the said property remained the property of Williams, and Moore and Teneson and their said confederates became and are trustees of a constructive trust, in law and equity, by their own wrong, and liable severally and jointly to plaintiff for the value of the property, and for the proceeds thereof.

"That said transfer was made by said Creager with the purpose and the intent to misapply the said property and the proceeds thereof and to appropriate to his own use said sum of $1500 on his said fictitious, fraudulent, and void claim, and which sum he did misapply to himself on said claim; that of said purpose and intent Moore, Teneson, the bank, and Williams had notice, and in which intent they all participated; that said transfer was fraudulent and void as to plaintiff and those whose claims are assigned to it; and that Moore and Teneson and their said confederates became, by their own wrong, liable to plaintiff for its said debt and for the debts assigned to it, as trustees of a constructive trust.

"That in a few days after said transfer, Teneson left to Moore full power of disposal of the goods; that in the course of some weeks Moore sold all of the goods by retail and wholesale for the price altogether of $8180, in money, solvent notes, and land; that plaintiff was not informed of most of the facts stated in this petition until long after said sale by Moore.

"That the debts herein sued for were secured by a lien on said goods, and the defendants, and especially Moore and Teneson, converted said goods to their own use, and became thereby liable to plaintiff for the amount by it sued for; that by reason of the premises Moore was guilty of wrongfully making away with and converting to his own use said mortgaged property, and thereby became liable to the beneficiaries therein, whose claims were valid, for the value of said property and for

the proceeds of sale of same, $8180, by him received therefor; and the bank and Teneson, by reason of the premises, also became likewise so liable.

"That by the conspiracy and the means above set forth, Moore and Teneson got possession of said goods at a greatly inadequate price, prevented competition among those wishing and able to bid on and buy said goods; and thereby the property was sacrificed, the sale to Tatum, at a higher price, to wit, about $2000 higher, was prevented, as was also the chance of a sale at a still higher price, and time and opportunity denied to others to examine the goods and make offers therefor; that said actions of Creager and defendants were in violation of the former's plain duty, and abuse of the trust, in fraud of the rights of preferred creditors and especially of the rights of those whose claims are unpaid, and which, but for said conspiracy and fraud, would have been paid out of said property.

"That after said transfer, Moore paid off the following claims, specified in the mortgage, to wit: to Templeton & Harding, $250; J. A. Pace, for rent of the store, $402.50; to Peoples Bank, $1870.67; to Teneson Bros. $300; and that Williams himself paid the following other claims, to wit: to J. W. Taylor, $35; to Chas. Taylor, $25; to A. S. Cochran, $46; that Moore thus paid $2822; that there were no taxes against said property and none claimed; that of the sum of $4320, agreed by Moore and Teneson to be paid for the goods, there now remains in Moore's hands, excluding the $1500 wrongfully misapplied to Creager's void claim, the sum of about $1498, and never by him applied to the payment of the other valid mortgage debts, but appropriated to his own use, and for which he and Teneson are liable to plaintiff, even if said transfer was not null and void as above alleged, and for which sum, with interest, plaintiff in the alternative sues.

"That the claims provided for by said mortgage, and remaining unpaid, are as follows, to wit: that of W. D. Milam, $100; that of W. D. Giddings, $200; that of Kendall and Allen, $175; that of Witte Hardware Company, $243; that of Wetter Manufacturing Company, $50; that of Ohio Cultivator Company, $548, aggregating the sum of $1316, with interest to be added, and to collect which this suit is brought. That said sum of $402 paid to Pace, embraced all the rents that were a lien on the goods; that the lease for 1897 by Pace to Williams for the storehouse, at $50 a month, payable monthly, was by the consent of Pace assigned by Williams, and the assignee in consideration of the use of the store becoming liable for said monthly rents for said year and paying the same to Pace.

"As to said collateral notes, that on the night of January 12, 1897, Williams gave Moore and Teneson an order on the bank for said notes, with the knowledge and consent of the bank; and that in a day or two the bank delivered said notes to Moore, and in a few weeks Moore delivered them to Williams, who has collected on them about $1000, having collected all of them except two small notes aggregating about

$35, concealing all knowledge and information concerning them, so that plaintiff could have no recourse on them or in any manner secure the proceeds thereof; that the notes were placed by the bank in Moore's hands and by Moore in Williams' hands with the intent that Williams should collect them or dispose of them for his own benefit; that said notes are shown in exhibit A, and a description of them was not known to nor obtainable by plaintiff till after this suit was brought, and all of them have been collected by Williams with 10 per cent interest, except two, one by J. L. Wooldridge and one by J. D. Duncan; that said action of the bank and Moore in causing said notes to go into the hands of Moore was in fraud and in violation of the rights of said unpaid beneficiaries, and said bank, Moore, and Teneson each became liable to said unpaid beneficiaries and to plaintiff for the face value of the notes, including interest, and amounting to over $1000, the same being collectible. That the effect of said mortgage was to give the bank a lien on the mortgaged property; and it already having a lien on the said notes, it was in duty and in law bound to collect said notes and apply the amount collected to its said doubly secured debt against Williams, before coming in under the mortgage; and that it was entitled to come in under the mortgage for the unpaid balance of its debt only after so applying said notes; or, if not bound so to collect and apply the notes itself, it was bound to see that, through the trustee or other safe person, said notes were collected and applied to the claims of said unpaid beneficiaries; that said unpaid beneficiaries were entitled to a marshaling of assets, and to have either the proceeds of said collateral notes or the notes themselves; that said notes were thus lost to plaintiff and to the unpaid beneficiaries, whose claims have been assigned to plaintiff, and the defendants are liable as aforesaid to plaintiff for their value.

"Said petition shows that by assignment plaintiff holds and owns all of the said remaining unpaid claims, mentioned in and provided for by the mortgage, six in all, being plaintiff's own original claim and said claims of Milam, Giddings, Kendall & Allen, Witte Hardware Company, and Wetter Manufacturing Company; that the said five last named creditors of Williams, each respectively, in writing, transferred to plaintiff his or their claim, together with all right and equities under and by virtue of the mortgage, and that plaintiff owns all of said claims; that plaintiff had sued Williams in the County Court of Ellis County and got judgment there against him for the amount of plaintiff's original claim and of the claim of Witte Hardware Company, previously assigned to it, to wit, for $895, with interest and costs; that plaintiff has sued Williams in the Justice Court at Ennis on said claim of Kendall & Allen, previously assigned to it, and obtained judgment thereon for $188, with interest and costs; that said Giddings had sued Williams on his said claim in said Justice Court, got a judgment there for $192.56 with interest and costs, and had afterwards in writing assigned said judgment to the plaintiff with all rights and equities under the mortgage;

that Milam and Wetter Manufacturing Company had each likewise sued Williams in said Justice Court and got judgments on their respective claims, and had transferred such judgments with all equities to plaintiff, the judgment of Milam being for $104 with interest and costs, and that of Wetter Manufacturing Company being for $126 with interest and costs; that on these judgments in favor of plaintiff and Giddings execution had been issued and returned wholly unsatisfied, no property of Williams to be found.

"Said petition further avers that defendants are jointly and severally liable to plaintiff for the amount of the said judgments, based on said six claims mentioned in the mortgage, and that plaintiff sues for the aggregate amount of said judgments, including interest.

"That shortly after said transfer by Creager of the goods, he failed in business at Denison, disposed of all his property, leaving a large amount of unpaid debts, becoming and being insolvent, removed from Texas, and became and continues a nonresident.

"The petition concludes with a notice to defendants to produce papers, and a prayer for judgment against defendants equal in amount to the said five judgments described in the petition, and for general relief."

After pleading the general demurrer, special demurrers were pleaded by defendants as follows:

"1. Plaintiff's bill is defective because the same does not purport to be general creditor's bill, and is not filed in behalf of other creditors, and that said bill shows upon its face that other parties are interested in the subject matter who are not made parties hereto, and there is a misjoinder of parties defendant and causes of action.

"2. Said bill is a direct violation of the statutes and rules in regard to pleading, in that it is not a concise statement of plaintiff's pretended cause of action, but on the contrary it is a detailed account and story and a rehearsal of the evidence and facts, or rather what plaintiff alleges to be the facts, covering some fifty odd pages, when five or six pages would be ample.

"3. Defendants except to all that portion of the said bill which attempts to attack a chattel mortgage described in said bill, or which attempts to attack any debt mentioned in said mortgage, for the reason that plaintiff shows that it and the claims which it pretends to hold accepted the terms of the said mortgage and thereby acquired rights under it. Plaintiff can not claim under the said instrument and at the same time attack it or any part thereof.

"4. Defendants except to all that part of said bill in relation to the claims of one Creager as being fictitious, because plaintiff, having accepted said instrument and still asserting its rights under the said instrument, can not be heard to question any part of the same, or any debt mentioned therein.

"5. Defendants except to all that portion of said bill relating to the notes, credits, etc., held by the Peoples National Bank as being imma-

terial and relating to matters concerning which plaintiff has no interest and never did have, and upon which plaintiff has no lien and never did have.

"6. Defendants except to all that portion of said bill alleging that it had any right of subrogation or marshaling of assets in regard to notes held by the Peoples National Bank as showing no right accruing to the plaintiff. Plaintiff fails to show that it resorted to any remedy known to the law to enforce any such right, even if it ever existed. Defendants say that the serving of the written notice as alleged by plaintiff is immaterial so far as the rights of subrogation is concerned, or indeed is immaterial for any purpose.

"7. Defendants except to all the claims alleged by plaintiff which have not been reduced to judgment, and further they except to all claims alleged by plaintiff to have been transferred to it, because it is not shown that the same were transferred for a valuable consideration, nor in writing, nor is it shown that plaintiff, who seems to be a corporation, has any right to become a purchaser for such claims. The allegations in plaintiff's amended petition further show that it has no interest in any of said claims, and has no such interest thereto or interest therein as entitled it to maintain a suit therefor.

"8. Defendants except to the allegations as to the cost of the stock of goods in question, and also as to what one Tatum offered to do, as being immaterial.

"9. Defendants except to all that portion of said bill which relates to the manner of payment to the trustee, as being immaterial.

"10. Plaintiff shows that the trustee named in the said mortgage had authority at private sale, and that he did sell the stock of goods, but plaintiff fails to show why title did not pass, and there is not sufficient allegation to show any liability as against these defendants for any want of judgment or discretion upon the part of the trustees.

"11. Plaintiff fails to show that it would in any event have received anything under said mortgage had the property been sold to anyone else.

"12. Defendants except to that portion of the said bill as attempts to allege that the purchasers of said stock became trustees. It is not shown how they became trustees, and plaintiff's cause of action, if any it has, would seem to be against the trustees, and not these defendants; there is no sufficient allegation of facts showing fraud between defendants and the trustee Creager.

"13. Defendants except to that portion of said bill which relates to the sale of the said goods by defendant Moore, as being immaterial.

"14. Defendants except to all that portion of the said bill which relates to the certain leasehold, as being immaterial, and also to that part of the bill relating that Williams had given an order for certain notes on the bank, as being immaterial and concerning matters in which plaintiff has no interest.

"15. Defendants except to that portion of said bill which relates to Creager having failed in business, as being immaterial.

"16. The defendant bank especially excepts to the said bill as being wholly insufficient to fix any liability upon it by reason of the facts, or related facts, as stated in the said bill, and there is a misjoinder of causes of action and parties. Defendants deny all and singular the allegations contained in the said bill, and of this put themselves upon the country."

We will first consider the action of the court in sustaining the general demurrer. We are of the opinion that the court erred in this particular. The plaintiff was a beneficiary in the deed of trust, and was interested in the proper management and sale of the property by the trustee in order that same might be sold for an amount sufficient to liquidate the debts held by plaintiff. The petition charges a conspiracy between the defendants and the trustee by which the trustee was induced to sell the property to Moore and Teneson for a consideration much less than its value, whereby plaintiff was prevented from realizing anything in payment of its debt. The trustee, in administering the trust, was charged with the utmost good faith, and if he acted fraudulently in disposing of the goods, and the defendants were parties thereto, they can not reap any benefits therefrom, but in receiving the goods they became liable to plaintiff for their reasonable value in excess of their claims secured by the deed of trust. Focke v. Wilkins, 82 Texas, 436; Boydston v. Morris, 71 Texas, 697; Veck v. Holt, 71 Texas, 715; Fouts v. Ayres, 11 Texas Civ. App., 338; Zapp v. Johnson, 30 S. W. Rep., 861; Ward v. Gibbs, 10 Texas Civ. App., 287; Moore v. Masterson, 19 Texas Civ. App., 308; Williams v. Beasley, 5 Texas Civ. App., 408.

The petition alleges the value of the goods to be much greater than the consideration paid by Moore and Teneson, which, if true, shows that by a proper management of the trust plaintiff would have received something on its claims out of the proceeds of the property, without considering the allegations as to the fictitious character of Creager's claim, which we will discuss in disposing of the special exception relating to the same.

We are also of the opinion that the petition shows a good cause of action against the defendant bank for the disposition of the notes held by it as collateral security for the payment of its debts. "A creditor of an insolvent debtor, secured by mortgage with another creditor, has the right to a marshaling of the securities held by such other creditor against a common debtor and to have such securities applied to the debt of such other creditor before he will be allowed to participate in such common fund." This rule is modified to the extent "that the paramount incumbrancer shall not be delayed or inconvenienced in the collection of his debt, for it would be unreasonable that he should because some one else had taken imperfected security." When, however, the prior creditor resorts to the doubly charged fund, the sub-

sequent lienholder will be substituted to the rights of the prior lien-holder.    Willis v. Holland, 13 Texas Civ. App., 689; Brown v. Thompson, 79 Texas, 58; Wahrmund v. Edgewood, 32 S. W. Rep., 227; Walhoefer v. Hobgood, 19 Texas Civ. App., 629; Pom. Eq. Jur., par. 1414; Bish. Eq., par. 341. .

The allegations of the petition show that plaintiff notified the defendant bank of its equities in the premises, and that subsequent to said notice the bank disposed of the notes held by it as collaterals, in utter disregard of plaintiff's rights of substitution, etc.    If the allegations of plaintiff's petition relating to this phase of the case be true, then it would be inequitable for the bank not to account for the value of the collateral notes it put beyond reach.    In treating of this doctrine Mr. Bispham says:    "Where the paramount creditor has been guilty of some negligence or default, as where he has put one of the funds beyond his own reach with the full knowledge that  his debt can not be satisfied out of the other fund, without injury to the interest of third persons, he may be restrained from coming in upon the second fund."    Bish., Eq., 6 ed., par. 341.

In Ramsey's appeal, 2 Watts, 228 (27 American Decisions, 301), it is said:    "But if there is any rule of principle of equity plainly, positively, and incontrovertibly established on the basis of reason and authority, it is that he who may at law control the application of two or more funds shall not be suffered to use his legal advantage to exclude the demand of a fellow creditor, whose legal recourse is but to one of them."

The bank having notice of plaintiff's lien before parting with the collateral notes, plaintiff is entitled to recover to the extent it may be damaged thereby.    Horning's Appeal, 90 Pa. St., 388;    Uniontown B. and L. Assn's. Appeal, 92 Pa. St., 200; Hosmer v. Campbell, 98 Ill., 572; Beach, Mod. Eq. Jur., par. 784; 14 Am. and Eng. Enc. of Law, 698.

We will now consider the action of the court on the special demurrers:

The court erred in sustaining the first special exception.    The plaintiff seeks to recover of the defendants for wrongfully meddling with trust property on which plaintiff asserts a lien.    If the defendants wrongfully converted the property, plaintiff is entitled to recover its damages, without making the other beneficiaries parties to this action. Besides, the petition shows that the beneficiaries  not made parties were provided for by the transaction complained of, and therefore not interested in this proceeding.    This exception fails to state wherein there is a misjoinder of causes of action, but in special exception number 16, it is alleged that the bank was improperly joined.    This contention is not tenable.    The bank is charged with participating in the wrongful conversion of the property, and with receiving more of the proceeds of the said property than it was entitled to, by reason of its not realizing upon the notes held by it as collateral security for its debt and fail-

ing to apply the proceeds as a credit upon said debt. We think the bank was a proper party.

The third and fourth exceptions relate to the attack made upon the debt of trustee, Creager, as being fictitious, etc. The proposition advanced by appellees is, that plaintiff having accepted under the deed of trust, it can not attack it, but is bound by its terms. We gather from the petition that the deed of trust was executed to secure various creditors and a preference given to Creager over plaintiff's claims.

It is well settled in this State that where a trust deed embraces a number of creditors, and the claim of one creditor is fictitious or fraudulent, a nonaccepting creditor can attack the instrument and have the fictitious claim eliminated, but such attack will not affect the instrument as to the creditors accepting and holding bona fide claims and not participating in the fraud. Sutton v. Simon, 45 S. W. Rep., 559; Weaver v. Goodman, 51 S. W. Rep., 860; Bloch v. Spruance, 12 Texas Civ. App., 309; Sugar Refining Co. v. Harrison, 9 Texas Civ. App., 141; Rider v. Hunt, 6 Texas Civ. App., 238.

Other cases might be cited, but these will suffice. In the above cases and others we have examined, the attack upon the instrument was made by creditors not named in the instrument, or if named, not accepting. In Bloch v. Spruance, supra, the attacking creditor was named in class "B" of the instrument, which was subject to class "A," but there is nothing to indicate that he accepted under the instrument, but from the nature of the action, which was a garnishment proceeding against the trustee, we conclude there was no acceptance by the attacking creditor. We have been cited to no case decided by our courts, nor have we been able to find any, which holds that an accepting creditor can attack a preferred claim as fraudulent. On the other hand, in the case of Milling Company v. Eaton, 86 Texas, 401, Stayton, C. J., speaking for the court said: "When a debtor voluntarily assigns property for the security and benefit of creditors, if the creditors choose to accept the assignment, they must abide by its terms and provisions; they must take it as an entirety; they can not accept in part and repudiate in part. Perry on Trusts, sec. 596; Burr on Assign., 3 ed., sec. 479. The creditor may have rights with which the assignment, so far as it confers rights upon others, is inconsistent. The assignment may derogate from instead of extending to him the measure of right to which he is entitled. If that be true, he must elect whether he will accept the assignment or whether he will reject it and stand upon the right he may have independent of it. He can not elect to claim under the assignment the right given by it, and repudiate it so far as it passes rights to others which are inconsistent with independent, distinct rights to which he may be entitled. Hatchitt v. Blanton, 72 Ala., 433; Frierson v. Branch, 30 Ark., 453; Pratt v. Adams, 7 Paige Ch., 641."

This court has held that "a junior mortgagee, whose mortgage is expressly made subject to a prior mortgage, can not defeat the prior

mortgage by showing that it is invalid." Park v. Prendergast, 4 Texas Civ. App., 456, and authorities there cited. See also Smith v. Farwell, 50 Pac. Rep., 151.

This principle is applicable to the case under consideration. By the terms of the trust deed Creager's claim was to be first paid, which had the effect to make plaintiff's claim subject to his claim. Plaintiff having accepted under the mortgage, it was bound by the terms thereof, and therefore can not attack the claim of Creager on account of its invalidity.

Our discussion of the general demurrer disposes of the fifth, sixth, tenth, eleventh, twelfth, and sixteenth exceptions.

We are of opinion that there is no merit in the seventh exception. The claims having been transferred to plaintiff by the owners thereof, it has a right to maintain an action thereon.

The eighth exception was improperly sustained. The allegations referred to were pertinent as to the value of the goods and showing bad faith in the trustee in selling them for much less than their value.

The ninth exception was not well taken, as the manner of payment to the trustee was a matter that might be looked to in determining whether or not there was fraud in the sale of the goods.

The thirteenth exception was not properly sustained. Fraud being alleged in the sale of the goods by the trustee, and participated in by Moore, the sale of the goods by defendant Moore for a much greater price than he paid for them was a circumstance that might be looked to in determining that issue.

The fourteenth exception was improperly sustained. If the rents had been liquidated by the lease of the premises to another, they should not have been paid out of the trust fund.

The fifteenth exception was properly sustained. The details of Creager's failure were immaterial. There were allegations that he was insolvent, which were sufficient.

The second exception should not have been sustained. In pleading fraud, the acts constituting fraud must be specifically alleged. Baines v. Munsing, 75 Texas, 201; Hendrick v. Nunn, 46 Texas, 149; Willis v. Hudson, 63 Texas, 678; Austin v. Talk, 20 Texas, 165.

The petition stated the facts relied on for a recovery with more particularity and detail, possibly, than was actually necessary; still we are of the opinion that it was not so defective in this particular as authorized the sustaining of this exception.

The court having sustained the general demurrer, an amendment of the petition to conform to the rulings of the court on the special demurrers would have availed plaintiff nothing, therefore his failure to amend will not prevent a reversal of the judgment.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*