M. A. ALLEN, Appellee, v. B. P. KIRK, Appellant.

1. **Sales of Personal Property:** FRAUD: EVIDENCE: CROSS-EXAMINATION. While, in an action involving the validity of a sale of personal property, alleged to have been made to defraud creditors, a wide latitude should be allowed in the cross-examination of the parties thereto, yet, where the record shows an extended cross-examination of a party, the cause will not be reversed because certain questions, pertaining to matters of an incidental or immaterial nature, or which were covered by previous inquiries, were not permitted.

2. ———: VALUES: WITNESSES: COMPETENCY. The value of a stock of merchandise cannot be shown by estimates thereof made by persons inexperienced in buying or selling goods in the same line, without examination, and without knowledge as to their quality, quantity or cost.

3. ———: FRAUD: CONSPIRACY: DECLARATIONS OF VENDOR. In such an action, the declarations of the vendor, made under oath, in relation to transactions between him and the vendee, but in the absence of the latter, and after the consummation of the sale, are not admissible in evidence as against the vendee, even under an issue as to a conspiracy between the parties in such transaction to defraud creditors.

4. ———: ———: EVIDENCE. Evidence that, some time prior to the date of the sale in question, the vendee offered twenty-five hundred dollars for a house, and at the time had a large package of money in her hand, *held*, competent as showing the vendee's ability to pay for the goods purchased.

5. ———: ———: INSTRUCTIONS. The defendant asked that the jury be instructed that, if plaintiff's vendor was insolvent, and made the sale in question to defraud his creditors, "and the sale is surrounded with suspicious circumstances in other respects," it is incumbent upon the plaintiff to show, by competent evidence, satisfactory to the jury, that she paid for the stock of goods as claimed

by her; and that the ease and facility with which a fictitious payment may be fabricated require that she produce all the proof which may reasonably be supposed to be in her power of the reality and fairness of the transaction, and that the want of clear proof in this regard, and without any satisfactory explanation as to where the money which she claimed to have paid came from, and how it was obtained, is evidence of fraud, and it is not sufficient that the plaintiff merely make proof of payment, but she must give a reasonable explanation as to where the money came from, and how it was obtained, which she claims to have paid for the stock, as such proof is within her knowledge and power. *Held,* that the instruction called for more than a preponderance of the evidence to establish payment, and was rightly refused.

6. ———: ———: ———. The goods in question having been taken from the plaintiff, under a writ of attachment against the property of her vendor, the jury were instructed that, if the plaintiff purchased for value before the levy, she was entitled to recover therefor, "unless they further found" that the purchase was not in good faith, or that she had notice that her vendor intended to defraud his creditors, or that she had knowledge of facts which should have put her on inquiry, and that would have led to that knowledge, or that she purchased in pursuance of a conspiracy to defraud the creditors of her vendor. *Held,* that instruction was proper.

7. ———: ———: ———: RELATIONSHIP OF PARTIES. In such an action an instruction that "it is lawful for a man to deal with his friends and relations, and that the presumption of law is that such dealings are fair and honest, without any fraudulent intent, and that no presumption of fraud attaches to such dealings," is not erroneous.

8. ———: ———: ———: MINGLING OF GOODS. The intermingling of goods. purchased with the intention to hinder, delay or defraud the creditors of the vendor, with other goods belonging to the vendee, will not operate as a forfeiture of ownership in the latter, in the absence of any showing that they are not distinguishable from the goods so purchased.

9. ———: ———: ———: ———. The plaintiff having mingled the goods in question with goods belonging to her husband, but afterwards transferred to her, *held,* that, before the officer serving the writ of attachment could escape liability for a levy upon the latter goods, he must show that he made a reasonable effort to distinguish them and separate them, and was unable to do so, or that, from the nature of the mixture, they of necessity could not be separated.

10. ———: ———: ———: DECLARATIONS. The court instructed the jury "that no evidence of anything said, done or written by the plaintiff's vendor, or the other alleged coconspirators, could be

considered against the plaintiff," unless they found that she had entered into said conspiracy, and that what was said or done was in furtherance of the common design. *Held*, that, in view of the subject of the instruction, it was not to be construed as excluding from the consideration of the jury acts and declarations of the persons named which would be competent as part of the *res gestæ*, though no conspiracy existed.

11. ——— : ——— : ——— : ADMISSIONS. An instruction that, as a general rule, the statements of a witness, as to verbal admissions of a party, should be received by the jury with great caution, as that kind of evidence is subject to imperfection and mistake, is proper.

12. ——— : —·— : ——— : CONSPIRACY. An instruction with reference to each conspirator being bound by the acts of the other further stated that the jury must find that the conspiracy existed as alleged, that the plaintiff was a party thereto, and that the acts and declarations of the conspirators must have been in furtherance of a common design, on the part of plaintiff and the other alleged conspirators, to defraud the creditors of plaintiff's vendor. *Held*, not subject to the objection that it bound the plaintiff by acts and declarations made only after she joined the conspiracy.

13. ——— : ——— : DAMAGES. The defendant having taken possession of and used the storeroom in which the goods in question were situated at the time of the levy, *held*, that evidence of the plaintiff's leasehold interest in the premises, and of the amount of rent paid thereunder, was competent as an element of damage.

*Appeal from Cerro Gordo District Court.*—HON. JOHN C. SHERWIN, Judge.

SATURDAY, JANUARY 24, 1891.

ACTION to recover for the wrongful taking and conversion of a stock of merchandise belonging to plaintiff, under writs of attachment in the hands of defendant, as sheriff, against the property of F. T. Fisher. The answer denies that plaintiff owned the merchandise, and alleges that the stock belonged to Fisher, and that the sale thereof by Fisher to plaintiff was made to hinder, delay and defraud the creditors of Fisher, and in pursuance of a combination between plaintiff, Fisher, Charles Allen and Ed. Allen to cheat and defraud the creditors of Fisher. There was a trial by jury, resulting in a verdict for the plaintiff. The defendant's motion for a new

trial was overruled, and judgment rendered on the verdict.   The defendant appeals.[*]

*Blythe & Markley, French & Wright* and *Kinsley & Shepard*, for appellant.

*R. Wilber* and *Cligget & Rule*, for appellee.

GIVEN, J.—The facts in this case are quite numerous, but the following, with those hereafter stated, will be sufficient to an understanding of the questions presented.   Fisher was in the boot and shoe business at Austin, Minnesota, and in October, 1888, opened a branch store at Mason City, sent goods there from Austin, and employed the plaintiff's husband, Charles Allen, to take charge of the business, with the assistance of plaintiff as clerk.   Charles Allen had a small stock of goods, from which he had been selling at Three Rivers, and which he put into the store at Mason City.   Plaintiff and her husband were in charge of the business until November 25, when Fisher sold his stock to the plaintiff, and executed to her a bill of sale reciting the consideration to be forty-six hundred and sixty-six dollars and thirty-three cents, which was originally written fifty-five hundred dollars, and changed at the request of the parties.   There is no question but that the plaintiff did then pay money to Fisher for the goods, but appellant claims that it was not her own, but money furnished directly or indirectly, by Fisher and Ed. Allen, to give seeming fairness to the sale.   Much of the contention is as to the sum paid, and whether plaintiff was able to pay it.   The plaintiff and her husband continued in possession of the store and goods until December 4, 1888, when the defendant, as sheriff, seized the entire stock as the property of Fisher, under writs of attachment, and thereafter held the same in the storeroom.   Charles Allen assigned to the plaintiff his part of the goods, and plaintiff served notice of ownership on the defendant, but he refused to surrender

the goods to her.  There is a conflict as to the value
of the goods put in the store by Charles Allen, and
as to what was done in the way of demand and
refusal to separate them from other goods.  The sev-
enty-nine assignments of error present inquiries as to
certain rulings of the court on admitting and rejecting
testimony, in giving and refusing instructions, and in
overruling defendant's motion for a new trial.  The
second assignment embraces eighteen exceptions to
rulings sustaining plaintiff's objections to questions
propounded to her on cross-examination.  To discuss
each assignment separately would serve no good pur-
pose, and extend this opinion to an unwarranted
length.  It will be sufficient that we notice the alleged
errors substantially as grouped in the arguments.

I.  Appellant complains that he was improperly
restricted in the cross-examination of the plaintiff.  We
recognize the rule that a large latitude
should be allowed in such cross-examina-
tion, but we think the many pages of
cross-examination contained in the abstract
show that the defendant was not unmindful of his
privilege.  The questions to which objections were
sustained were either as to incidental or immaterial
matters or covered by previous inquiries.  The cross-
examination of a party, even in such a case as this,
must have a limit, and we think, in view of the
extended cross-examination, there was no prejudicial
error in the rulings of the court on the question
embraced in the second assignment of error.

II.  Four witnesses had testified in depositions as
to the value of the goods kept by Mr. Allen at Three
Rivers.  None of these witnesses had any
experience in buying or selling that kind
of merchandise, and three of them testified
from the observation of the goods as seen in the store at
Three Rivers, without any knowledge as to their quality,
quantity or cost.  The other witness, a butcher by trade,
had been employed by Allen to look after the store.
He had no experience in that line of business, never

1. SALES of per-
sonal proper-
ty: fraud: evi-
dence: cross-
examination.

2. ——: values:
witnesses:
competency.

made any estimate of the quantity, quality or value of
the goods, and had no knowledge of their value,
except as marked for retail. The valuation by such
witnesses was a mere guess, and does not attain to that
certainty that entitles it to be considered as evidence.
There was no error in striking these parts of the
depositions.

III. Defendant offered to prove that Fisher, in
giving testimony on December 4, 1888, stated that he

3. ——: fraud: had shipped the goods to plaintiff in the
conspiracy: original packages in which they came from
declarations
of vendor. the wholesale dealers; that he received
from her forty-six hundred dollars cash; that he told
her he wanted the money, and nothing else; that his
bills became due soon, and he must have pay for the
stock; that he took the money to Austin, but did not
deposit it, and lost it in a gambling-house in St. Paul,
and did not know where the house was, the name of
the proprietor, nor the parties with whom he played;
that the sales at Mason City amounted to seven
hundred or eight hundred dollars, up to the time
he sold out; and that no invoice was taken at the time
of the sale to the plaintiff. The further offer was that
Fisher testified that, on December 1, he attempted to
dispose of his stock at Austin for eighty cents on the
dollar to one Bluestone, sent there by, and in company
with the bookkeeper of, Ed. Allen, and that one Oaks
shoved money from his person over to Bluestone with
which to pay Fisher. The plaintiff's objection to the
testimony was sustained. The practice of counsel,
stating in the presence of the jury what they offer to
prove, is not entitled to favor. Every practitioner
knows that this practice is sometimes resorted to for
the purpose of getting before the jury statements that
are not admissible, in the hope that the jury may not
discriminate between such statements and the testi-
mony. The better practice is to present the offer by
interrogatories, as, in most instances, the admissibility
of the offered testimony can be fully raised by a few
questions. If this is not practicable, the offer may be

stated to the court in writing, and made a part of the record. By the practice suggested, the result in the case is placed beyond the suspicion of having been reached by statements not admitted in evidence. There is nothing in the record in this case to indicate that the practice we condemn was resorted to. It does not appear that the offer was made in the presence of the jury; that it exceeded what appeared in the written testimony of Fisher, nor that it was not made in writing. Appellant's contention is that these statements of Fisher were admissible, as tending to show an intent on his part to hinder, delay and defraud his creditors, and as the declarations of a coconspirator. It will be observed that Fisher is not a party to this action; was not a witness; that the statements offered were not made until nine days after the sale to plaintiff; were made in her absence; and were as to past transactions. That the statements were made under oath, does not affect the question of their admissibility. These statements were no part of the transaction with the plaintiff. The sale to her was fully completed. The alleged intent to defraud the creditors of Fisher by the sale, whether in pursuance of a conspiracy or otherwise, had, if it existed, been fully consummated, and, therefore, the statements are no part of the *res gestæ*. *Bogart v. Phelps*, 14 Wis. 95; *Hamilton v. Lightner*, 53 Iowa, 470; *Guaranty Co. v. Gleason*, 78 N. Y. 515; Bump. Fraud. Conv. 580. The general rule is that statements made by a grantor, after he has parted with his title, tending to impeach his grantee's title, are not admissible. An exception to this rule is where the grantor and grantee conspire together to defraud third persons. *Kennedy v. Divine*, 77 Ind. 491; *Williams v. Eikenbury*, 41 N. W. Rep. (Neb.) 770; *Bank v. Corcoran*, 2 Pet. 121. Under this rule, the statements offered are inadmissible unless they come within the exception. Declarations of conspirators are only admissible as a part of the *res gestæ*. Bump, Fraud. Conv. 584; *Guaranty Co. v. Gleason*,

*supra.* As already stated, the making of these state-
ments was no part of the *res gestœ.* The declarations,
to be admissible, must have been "made in the execu-
tion of the common purpose, and in aid of its fulfill-
ment." Wait, Fraud. Conv., sec. 280. The common
purpose to hinder, delay or defraud the creditors, if it
existed, was consummated when the sale was made, and
these statements are not made in aid or execution of it.
We see no error in excluding the offered testimony.

IV. There was no error in overruling the motion
to strike from the deposition of Cannon. In answer to
the question: "State any other fact you
know of interest to the plaintiff," he said
that, in 1887, she offered twenty-five hundred dollars
for a house, and at that time had a large package
of money in her hand. This testimony was admiss-
ible as bearing upon the question of plaintiff's ability
to pay Fisher for the goods. We do not deem it neces-
sary to discuss the other errors assigned and argued as
to admitting and rejecting testimony. We have exam-
ined each assignment with care, and are satisfied that
the exceptions are not well taken.

V. Appellant complains of the refusal to give the
first, second, fifth, eighth, ninth, tenth, eleventh and
fourteenth instructions asked. The first is
to the effect that, if Fisher intended to
defraud his creditors, and plaintiff knew of circum-
stances which would have put an ordinarily prudent
person upon inquiry that would have discovered the
fact, then the burden is on plaintiff to show that she
purchased in good faith, for value, without notice of
the fraudulent intent. The third recites circumstances
claimed to be proven, as that the purchase was for less
than the real value; that no invoice was made; that
Fisher was insolvent; and that, if plaintiff knew, or
could have known by ordinary inquiry, of his insol-
vency, then the circumstances shown are to be consid-
ered in determining whether or not the sale was
fraudulent. The fifth is to the effect that, if Fisher
intended by the sale to defraud his creditors, and the

plaintiff participated in, or knew or had notice of, such fraudulent intent, before or at the time she purchased, the defendant is entitled to recover. The eighth that, if Fisher made the sale with intent to defraud his creditors, and such purpose was known to plaintiff at the time of the purchase, and she participated therein, she took no title to the property, although she paid full value therefor. These instructions are substantially embraced in the third, fourth, fifth and seventh paragraphs of the instructions given.

The ninth instruction refused is that if Fisher was insolvent, and made the sale to defraud his creditors, "and the sale is surrounded with suspicious circumstances in other respects," it is incumbent on the plaintiff to show, by competent evidence, satisfactory to the jury, that she paid for the stock of goods, as claimed by her ; and the ease and facility with which a fictitious payment may be fabricated require that she produce all the proof which may reasonably be supposed to be in her power of the reality and fairness of the transaction ; and the want of clear proof in this regard, and without any satisfactory explanation as to where the money which she claimed to have paid came from, and how it was obtained, is evidence of fraud, and it is not sufficient that the plaintiff makes merely proof of payment, but she must give a reasonable explanation as to where the money came from, and how it was obtained, which she claims to have paid for the stock, as such proof is presumptively within her knowledge and power. This calls for more than a preponderance of evidence to establish the 'payment. The rule as to the burden of proof, and as to what is preponderance of evidence, was fully stated in the instructions given.

The tenth instruction refused recites circumstances going to the weight to be given to the testimony of the plaintiff, such as her interest, contradictory statements, and that the preponderance of evidence is not necessarily determined by the number of witnesses. The entire substance of this instruction was also embraced in those given. The eleventh is a restatement, in part,

of the rule where the purchaser has knowledge of facts such as should charge her with notice of the seller's fraudulent intent. As already stated, that subject is fully covered in instructions given. The fourteenth asked is that relationships between witnesses and the party should be considered in weighing their testimony. The only reference to this subject is in the eleventh paragraph of the charge, wherein the jury are directed to consider the interest of the witnesses, their conduct while testifying, their apparent fairness or bias, appearance on the stand, reasonableness of the testimony, etc. Relationship is not directly mentioned, yet a jury would understand that as a fact to be considered as affecting their interest, fairness or bias.

VI. Appellant complains of paragraphs 5, 5½, 8, 9 and 10 of the charge. In the fifth paragraph, after stating that the law presumes that all persons transact their business honestly, and in good faith, until the contrary appears ; that it is lawful for a man to deal with his friends and relations, and that the presumption of law is that such dealings are fair and honest, without any fraudulent intent, and that no presumption of fraud attaches to such dealings,—the court directed the jury that, if they found that the plaintiff purchased the goods from Fisher, for a valuable consideration, before the levy of the attachment, "she will be entitled to recover in this action, unless you should further find" that the plaintiff did not purchase in good faith, or that she purchased with notice that Fisher intended to defraud his creditors, or of facts that should have put her upon inquiry that would have led to that knowledge, or that she purchased in pursuance of a conspiracy, on the part of herself and the others named, to defraud the creditors of Fisher. Appellant's objection is that the language "or unless you further find" might be understood as meaning "nor unless you further find." The language is not susceptible of such construction. The jury are told that the plaintiff is entitled to recover, if she purchased for value, before the levy, unless she did so in

6. THE same.

pursuance of a conspiracy, as alleged, or with knowl-
edge of an intent on Fisher's part to hinder, delay or
defraud his creditors, or of facts that should have put
her upon inquiry that would have led to that knowledge.

VII.   The further complaint is that the statement
as to the right of friends and relatives to deal together
7. ——: ——:   is not the law.   We are aware of no law
——: relation-
ship of par-   which prevents friends and relatives from
ties.          buying and selling between each other, or
that creates any presumption of fraud from the mere
fact of their dealing.   When fraud is charged, the rela-
tion of the parties is proper to be considered.   We see
no error in the instruction.

VIII.   The court instructed in paragraph 5½ that, if
defendant levied upon and took goods which were then
8. ——: ——:   the property of Charles Allen, and purchased
——: ming-
ling of goods.   by plaintiff before the commencement of
this suit, plaintiff was entitled to recover
the reasonable market value thereof.   Aside from any
question as to the mixing with, and the separation of
these goods from, the Fisher stock, the instruction is
correct.   On the subject of mixing and separating, the
court instructed, in paragraph 9, that, if the sale by
Fisher to plaintiff is void, and she intermingled other
goods for the purpose of hindering and delaying the
creditors of Fisher, and was given an opportunity by
defendant to separate her goods, and failed or refused
to do so, then the defendant is not liable therefor ; but,
if defendant refused to permit her to make such separa-
tion, then he would be liable, if a demand was made by
plaintiff for such goods.   Appellant contends that, if
the goods were mixed for the purpose of hindering and
delaying the creditors of Fisher, plaintiff was not
entitled to a separation.   There is no forfeiture of own-
ership, except where one wilfully intermingles his prop-
erty with that of another so that it becomes impossible
to distinguish what belongs to one and what to another.
2 Kent, Comm. 365.   It is not contended that these
goods were not distinguishable.   The plaintiff, and
probably others familiar with the goods, were able to

distinguish them. The purpose of hindering and delaying the creditors of Fisher would not work the forfeiture of the goods.

IX. In paragraph 7, asked by plaintiff, the court further instructed that, if the plaintiff mixed goods belonging to her husband with the Fisher stock, before she had notice that Fisher's creditors designed to assail her purchase, the defendant was not justified in levying on such other goods, if he had notice that she claimed the goods other than the Fisher stock, and that, before he could escape liability, "it should be shown that he made reasonable effort to distinguish and separate them from the Fisher goods, and that he could not, by reasonable effort, get the information that would enable him to so distinguish them, and, therefore, could not separate them, or that, from the nature of the mixture, they, of necessity, could not be separated." It appears from the verdict of the jury that they must have found that the sale from Fisher was not fraudulent, and in that case the question of the separation of the Charles Allen goods becomes immaterial. We think, however, that the instructions, taken together, correctly announce the law. See *Pulcifer v. Page*, 54 Amer. Dec. 582, and notes.

*9. The same.*

X. In the eighth paragraph, the court, after defining conspiracy, directed the jury that, if plaintiff purchased in pursuance of a conspiracy, as charged, she could not recover ; that, if such a conspiracy did exist, and plaintiff was one of the conspirators, then the acts and declarations of any of her coconspirators, said and done in the execution or furtherance of the common purpose, would be deemed to be said or done by all, "but that no evidence of anything said, done or written by either T. F. Fisher, Ed. Allen or Charles Allen can be considered against the plaintiff, unless you find from the evidence that she had entered into said conspiracy," and that what was said or done was in the execution or furtherance of the common design. The complaint is that this excludes all the acts, declarations and writings of Fisher, Ed.

*10. ——: ——: ——: declarations.*

Allen and Charles Allen. One defense is that the sale to plaintiff was with intent, upon the part of herself and Fisher, to thereby hinder, delay and defraud his creditors. Acts and declarations, forming part of the *res gestæ*, are clearly proper testimony, even if there were no conspiracy. We do not think that, viewed in the light of its subject-matter and accompanying instructions, that paragraph will bear the construction given it. It relates exclusively to the defense of conspiracy, and could not be understood as withdrawing what was said and done in the presence of plaintiff, and in consummation of the sale.

XI. In the tenth paragraph, the jury were instructed "that the verbal admissions of a party to a suit, when made understandingly and deliberately, often afford satisfactory evidence; yet, as a general rule, the statements of a witness, as to verbal admissions of a party, should be received by the jury with great caution, as that kind of evidence is subject to imperfection and mistake. This is within the rule as laid down in Greenl. Ev., sec. 200; *Martin v. Algona*, 40 Iowa, 390, and generally recognized in the authorities. It does not instruct that admissions understandingly and deliberately made are subject to imperfection and mistake, but that the imperfections of such evidence is in the statement or recollection of the witness as to the verbal admissions.

11. ——: ——: ——: admissions.

XII. Appellant complains of the modification of the sixteenth instruction asked by defendant. The instruction asked lays down the rule as to each conspirator being bound by the acts of the other, and the modification is that the jury must find that the conspiracy existed as alleged, and that the plaintiff was party thereto, and that the acts and declarations of the conspirators must have been in furtherance of a common design, on the part of plaintiff and the other alleged conspirators, to defraud the creditors of Fisher. This modification made the instruction to present the entire subject to the minds of the

12. ——: ——: ——: conspiracy.

jury in accordance with the law. It does not, as contended, only bind the plaintiff by acts and declarations made after she joined the conspiracy.

XIII. There was no error in submitting the question of damage for the leasehold interest of plaintiff in the storeroom. There was evidence tending to show that she had such an interest, the amount of rent to be paid, and that it ha1 been paid, and that defendant took and used the room. The pleadings are broad enough to include the Charles Allen goods. The defendant took the entire stock, including these goods, and plaintiff claims the entire stock; hence the question as to the Charles Allen goods was not outside the issues.

XIV. Appellant attacks the instructions as a whole, as ambiguous, uncertain, confusing, and for other causes. We have examined them with care, and are of the opinion that they fully and fairly presented the case to the jury. Another complaint is that the verdict is the result of passion, prejudice or error, and is excessive. While there is much in the testimony bearing against plaintiff's right to recover, there is not such an absence of testimony to support the verdict as to justify this court in interfering therewith.

The case was fully and fairly submitted, and, the jury having found as under the law and the evidence they might, the judgment of the district court should be AFFIRMED.