### ANDREWS et al. v. BROWN et al.
(No. 1060–4652.)

Commission of Appeals of Texas, Section A.
Nov. 21, 1928.

Gibson & Lovett, Jester & George, and Richard & A. P. Mays, all of Corsicana, for plaintiffs in error.

Jack & Jack, Callicutt & Upchurch, and R. B. Molloy, all of Corsicana, for defendants in error.

NICKELS, J. We refer to the opinion of the Court of Civil Appeals (283 S. W. 288) for a general statement of the case. In view of conclusions reached in certain particulars,, various questions presented directly or indirectly need not be discussed.

1. The writer doubts that objections made and preserved in respect to the charge on undue influence present reversible error, but a majority of the members of the Commission are convinced that the use (in the definition of "undue influence") of such terms as " 'in some measure' destroyed the free agency" was prejudicially erroneous; in this they are substantially in accord with the Court of Civil Appeals. See 283 S. W. 288, 294; Shelton v. Shelton, 281 S. W. 331, 334, 335. They believe, also, that the charge is justly subject to criticism as being argumentative and on the weight of the evidence. This, of course, leads to recommendation of affirmance of that part of the judgment of the Court of Civil Appeals remanding the cause for trial upon issues touching the funds, etc., arising from conveyance of the mineral estate.

2. We are not in agreement with the honorable Court of Civil Appeals upon the law of these issues as retriable upon the basic question of undue influence, or not, exerted in procuration of the deed of January 10, 1923, executed by N. H. Brown to W. A. and S. H. Brown, and the consequence of such undue influence, if established, and discussion on certain points becomes necessary.

3. In 1917 N. H. Brown owned 100 acres in fee simple. Subject to effect of a clause in the deed, he conveyed the land (in that year) to his sons, W. A. and S. H. Brown. That clause is in these words:

"It is distinctly understood, however, that I reserve to myself, for and during my lifetime, all of the oil, gas and other minerals in, under and upon said land, and all of the royalties arising therefrom, such oil, gas, mineral rights and royalties to become the property of the grantees upon my death."

Authority to work severance of minerals in place inhered in Brown's proprietorship, and authority to that end he used in thus presently granting the other constituents. Texas Co. v. Daugherty, 107 Tex. 234, 176 S. W. 717, L. R. A. 1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Ass'n, 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

Neither act of the parties nor operation of law created a "life estate" (in the minerals) in N. H. Brown, or a "remainder" in W. A. and S. H. Brown, in the true sense. Minerals were expressly excepted from the præsenti grant and retained by the vendor. "Life estates" and "remainders," properly so called, do not come into existence in that way. 10 R. C. L. 661, 662.

The minerals thus retained, it was stipulated, were to "become the property of the grantees upon * * * death" of N. H. Brown, vendor. By statute (article 1111, R. S. 1911; article 1296, R. S. 1925) it is provided that "an estate or freehold or inheritance may be made to commence in futuro, by deed or conveyance, in like manner as by will," and by his deed, as we interpret it, N. H. Brown provided for an estate in the minerals to commence (in W. A. and S. H. Brown) upon his death. That is to say, he provided for "qualification annexed" in words expressed in the grant, for his death as the condition precedent to vesting of an estate in his vendees. 10 R. C. L. 663, 664.

That severance, conveyance of parts other than placed minerals, etc., and continued ownership of the latter, ex vi necessitate, and therefore by operation of law, left in the vendor right to such use of the land (as severed from minerals) as might be reasonably appropriate to enjoyment of the subject-matter directly retained. Texas Co. v. Daugherty, and other cases cited above.

The condition named as precedent to vesting of estate (in minerals) in W. A. and S. H. Brown had not occurred when the mineral "lease" was negotiated, executed January 10, 1923, and delivered to Roxana Petroleum Company January 21, 1923, by them. In consequence, most (if not all) of that which was sold to Roxana Petroleum Company, and which is now represented by the fund in question, was not owned by W. A. and S. H. Brown in virtue of the 1917 conveyance. We do not say, or imply, that W. A. and S. H. Brown might not have made a valid contract respecting the estate as yet to commence, nor that the "lease" in fact executed would not have bound them in respect to the estate in futuro, as and when the subject-matter thereof should become available for their enjoyment; those are questions which (with the question whether they presently owned anything at all which they might sell) had best be left to the occasion when their determination is essential, such an occasion not now existing, for reasons presently appearing.

A resultant of a finding of "undue influence" will be a character of trustees ex maleficio for the grantees in the deed of January 10, 1923, executed by N. H. Brown to W. A. and S. H. Brown, conveying what had been left in the grantor by the 1917 deed. Hendrix v. Nunn, 46 Tex. 141; 1 Perry on Trusts and Trustees (6th Ed.) §§ 166, 189, 190; 20 R. C. L. 1236; 35 A. L. R. 286. If the 1923 deed was thus procured, the beneficial interest in the subject-matter of the grant

remained in N. H. Brown up to transfer to a bona fide purchaser; this apparently happening January 21, 1923. In that event, and upon familiar principles, the proceeds of the sale (January 21, 1923)—i. e., the fund now involved—were impressed with a like beneficial interest, which thereafter remained in N. H. Brown to his death (in June, 1923), and thereafter by descent cast in his heirs, unless (while competent and free of undue influence) N. H. Brown ratified all that had been done.

We have remarked that determination whether any part of that which was sold to Roxana Petroleum Company (January 21, 1923) belonged to W. A. and S. H. Brown by operation of the 1917 deed is nonessential. It may be assumed, for instant purposes, that W. A. and S. H. Brown did own, in that right, some part of the thing sold in return for the money now in question. With that assumption indulged, two things are yet obvious: (a) A very substantial part of the consideration paid was for the estate left in N. H. Brown by the 1917 deed. (b) In the nature of things, respective values of that interest of N. H. Brown and the interest (if any) of W. A. and S. H. Brown are not subject to allocation as of date of the 1923 deed and "lease," or in respect to the resulting fund. Such apportionment (with the nature of the subject-matter in mind) could not be made, absent agreement on the subject by able-minded persons voluntarily acting; existence of that agreement being precluded if N. H. Brown (when he made the deed and subsequently) was subject to undue influence, etc. This is true, because the estate of N. H. Brown was in the minerals as severed (and not in the land as a whole, as in Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117, Id. (Tex. Civ. App.) 78 S. W. 380, and other cases involving efforts to ascertain directly or indirectly the value of "life estates" and "reminders," etc.), and because each and every factor essential to any calculation whatever (under the conditions by which the estates, etc., and the parties were circumstanced) would be without support of more substance than that of which a pure guess is made.

In the situation thus projected, then, and upon the assumption of "undue influence," there inhere these factors: (a) W. A. and S. H. Brown, having become trustees (January 10, 1923) of property of N. H. Brown of undisclosed, but substantial, value, thereafter in effect mingled that property with their own (of undisclosed value) and converted the mass into a fund (net) of $57,500. (b) That mingling of properties and sequently of funds was done without fault of N. H. Brown, or of those subsequently interested through heirship, but in wrongs by W. A. and S. H. Brown; this in consequence of the jury's verdict establishing "undue influence" in procuration of N. H. Brown's deed of January 10, 1923.

■ "If a man mixes trust funds with his own," it is said, "the whole will be treated as trust property, except so far as he may be able to distinguish what is his own." Vice Chancellor Sir W. Page Wood, in Frith v. Cortland, 2 Hem. & M. 417, 420. That principle seems to have recognition in most, if not all, American jurisdictions. See Central Nat. Bank v. Connecticut Ins. Co., 104 U. S. 54, 67, 26 L. Ed. 693; Israel v. Woodruff (C. C. A.) 299 F. 454; Evans v. Evans, 200 Ala. 329, 76 So. 95; Hutchinson v. Nat. Bank of Commerce, 145 Ala. 196, 41 So. 143; Holman v. Tjosevig, 6 Alaska, 690; Ward v. Armstrong, 84 Ill. 151; Brackenridge v. Holland, 2 Blackf. (Ind.) 377, 20 Am. Dec. 123; Tufts v. Latshaw, 172 Mo. 359, 72 S. W. 679; Snorgrass v. Moore, 30 Mo. App. 232; Harrison v. Smith, 83 Mo. 216, 53 Am. Rep. 571; Mills v. Post, 76 Mo. 426; Moore v. First Nat'l Bank, 154 Mo. App. 516, 135 S. W. 1005; Cox v. Wills, 49 N. J. Eq. 573, 25 A. 938; People's Nat. Bank v. Waggoner, 185 N. C. 297, 117 S. E. 6; Fidelity & Deposit Co. v. Rankin, 33 Okl. 7, 124 P. 71; Watson v. Thompson, 12 R. I. 466; Allen v. Kirk, 81 Iowa, 658, 47 N. W. 906; 1 Perry on Trusts and Trustees (6th Ed.) §§ 447, 821.

Analogous doctrines are part of the law of accession and specification (Carpenter v. Lingenfelter, 42 Neb. 728, 60 N. W. 1022, 32 L. R. A. 422, and cases cited in note), and of confusion of goods (The Idaho, 93 U. S. 575, 586, 23 L. Ed. 978; Union Naval Stores v. United States, 240 U. S. 284, 36 S. Ct. 308, 60 L. Ed. 644; 5 R. C. L. 1050, 1052; notes in 11 Am. St. Rep. 179, 101 Am. St. Rep. 913, and 54 Am. Dec. 591). The principle, we apprehend, is but a part of equity's declination to extricate the wrongdoer from self-imposed hard conditions, or to tax the innocent, where one of two not in pari delicto must suffer.

■ The principle, we think, has application here, and with a consequence that the whole of the $57,500 fund (less the $1,000 supposed to have been paid N. H. Brown, if in fact paid) must be regarded as trust property belonging to the heirs of N. H. Brown (including W. A. and S. H. Brown), in virtue of the laws of descent and distribution, in the event of "undue influence" in procuration of the 1923 deed and nonratification under conditions noted.

3. In our opinion, the case, in all respects save the issues concerning the fund mentioned, was given right disposition.

4. Accordingly we recommend that the judgment of the Court of Civil Appeals (reversing the judgment of the district court in part and affirming it in part) be affirmed, but with directions for the new trial (on the issues there involved) in accordance with this opinion.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, with directions, as recommended by the Commission of Appeals.