## LUNG v. LUNG et al.

### No. 10126.

Court of Civil Appeals of Texas. Austin.

May 20, 1953.

Rehearing Denied June 10, 1953.

254

Robert Mueller, Coleman Gay, by Coleman Gay, Austin, for appellant Sam P. Lung.

David L. Tisinger, Austin, for appellee-appellant Margarita Lung.

E. H. Smartt and Jno. C. Butler, Austin, for appellee Arthur Lung.

GRAY, Justice.

Margarita Lung, a widow and the surviving wife of Jesse Lung, deceased, filed this suit against Sam P. Lung, individually and as independent executor of the estate of Dora Lung, deceased; John Lung; Charlie Lung; Jimmie Joe Lung; Inez Lung, a feme sole; Annie Lung Wong, a widow; Arthur Lung; Lula Lung Powell, and her husband Wilbur Powell, and prayed for judgment declaring her to be the equitable owner of an interest in various properties, the legal title to part of which was in Dora Lung and legal title to part of which was in Sam P. Lung.

The defendants (except Jimmie Joe Lung who is the son of Jim Lung, deceased, and Wilbur Powell, the husband of Lula Lung Powell) are children of Joe Lung and Dora Lung, both deceased. Joe Lung died intestate in 1926, leaving as his surviving heirs his wife Dora and their nine children: Annie, Lula, Jim, Jesse, Charlie, John, Inez, Arthur and Sam P. Jesse died intestate September 4, 1945, leaving surviving him his wife, the plaintiff, but no children. Dora Lung died testate in 1947, and by her will gave her property to her eight living children. She named Sam P. Lung independent executor of her estate. Jim died subsequent to 1947, and left as his surviving heir, Jimmie Joe.

At the death of Joe Lung in 1926, the family's property consisted of the home-

stead, the Joe Lung Cafe and cash of approximately $1,156.50. However at that time it appears there were two pieces of real property held in the name of Dora Lung, both of which were apparently acquired during her marriage to Joe Lung. After 1926, the Joe Lung Cafe was operated by Dora and the children—it appears however that Inez Lung and Mrs. Wong lived in China and did not actively participate in the operation. For their work the children were paid the same wages that they could have received elsewhere for the same kind of work. The profits from the cafe were deposited in the bank accounts (or kept in cash) and investments were made in property. In the early 1930's the management of the cafe was turned over to Sam P. Lung. Thereafter he was in charge of the cash, the bank accounts, and other assets properly belonging to the business. Generally he carried two bank accounts: the Sam P. Lung account in the American National Bank in which account the profits from the Joe Lung Cafe were deposited, and (2) the Sam P. Lung account in the Austin National Bank, the same being his personal account. It also appears that accounts in the name of Dora Lung were carried in each of these banks. Money was transferred from the Sam P. Lung account in the American National Bank to his account in the Austin National Bank, and to the accounts of Dora Lung. There has never been any accounting or settlement between the interested parties, and prior to this suit none had been asked.

There is no evidence of the existence of any strained relations existing between the parties, and the evidence shows that all parties had complete confidence in Sam P. Lung. He loved them and they loved him. He never consulted the others about investments or as to withdrawals of money from the American National Bank accounts and they never questioned him about them.

It appears that Sam P. Lung successfully managed the Joe Lung Cafe and that profits were made from that business. Property was purchased by Sam P. Lung in his name and also there was property purchased in the name of Dora Lung, which property Sam P. said was purchased by her, although he was often or usually consulted.

The source of Sam P. Lung's income was the profits from the Joe Lung Cafe and the profits from his investments. Dora Lung's income was from the cafe profits, from her investments and a "few hundred" dollars she earned sewing.

The Joe Lung Cafe was closed in June, 1950, but the furniture, fixtures and the equipment is still on hand and has an estimated value of $15,000.

In April, 1946, Sam P. Lung opened another cafe known as the Chinese Kitchen and which he claims as his own. Others, however, testified that they had a working interest in it.

Sam P. Lung testified that in 1926, "some savings was about all I had."

Plaintiff is of Spanish descent and testified that she was not familiar with legal terms and legal relations. Jesse Lung reached the fifth grade in school. Sam P. Lung attended the University of Texas two years.

On December 22, 1945, plaintiff executed and delivered a quitclaim deed to Dora Lung and the eight surviving brothers and sisters of her deceased husband, quitclaiming to them all claims, rights, titles, interest, debts, demands, choses in actions and causes of action owned or held by her by virtue of her being the surviving widow of Jesse Lung, deceased. The recited consideration for this instrument was the payment of $1,109.61—the proceeds of an insurance policy on the life of Jesse Lung and payable to Dora Lung as beneficiary; U. S. Government bonds totalling $2,750 payable to Jesse Lung and to Jesse Lung and wife Margarita, and a deed from Dora Lung to a house and lot—the same being the house occupied by Jesse Lung and plaintiff during his lifetime.

This quitclaim deed was not filed for record until after this suit was filed September 8, 1950.

Plaintiff sought to have the quitclaim deed cancelled and set aside on various grounds including fraud, and offered to do equity by restoring the consideration or, in the alternative, crediting it on her recovery.

On August 24, 1949, John Lung executed a quitclaim deed to Sam P. Lung, trustee, "in trust for the benefit of Sam P. Lung, Lula Lung Powell, Charlie Lung, Arthur Lung and Jimmie Joe Lung" quitclaiming to them various properties. The recited consideration for this quitclaim deed is $1 "receipt of ———— is hereby acknowledged from Sam P. Lung, independent executor of the estate of Dora Lung, deceased, said cash and other property being in full satisfaction of my interest and claims against the estate of my mother, Dora Lung, deceased."

Arthur Lung answered, adopted the pleadings of plaintiff and prayed that he be declared to be the owner of a one-seventh interest in the alleged partnership, for a partition, an accounting and an adjustment of equities.

The defendants (except Arthur) made no claim to the property standing in the name of Dora Lung except by inheritance and under her will—claimed no interest in the property standing in the name of Sam P. Lung, but in the alternative prayed that in the event that plaintiff is adjudged to be the owner of any interest in said property that they each recover a like judgment.

A jury trial was had and in answer to special issues the jury found: that on January 1, 1936, Dora Lung, Inez Lung and Annie Lung Wong each gave their respective interest in the Joe Lung Cafe to the seven Lung children who worked there; that the real estate, bonds, cash and other assets standing in the name of Dora Lung at the time of her death (except real estate purchased prior to Joe Lung's death) were not placed in her name to be held by her for the benefit of the owners of the Joe Lung Cafe, and that the cash in the name of Dora Lung and the profits from the Joe Lung Cafe used in the purchase of real estate, bonds and other assets in the name of Dora Lung after Joe Lung's death were intended by the owners as a gift to her.

Issues were not submitted relative to the quitclaim deed executed by plaintiff, nor relative to the assets standing in the name of Sam P. Lung.

The parties filed motions to disregard jury findings adverse to them and for a judgment in their favor.

These motions were overruled and a judgment was rendered declaring and fixing the interest of plaintiff at one-sixth in the furniture, fixtures and equipment of the Joe Lung Cafe, together with the cash and bank accounts of said cafe; adjudging her to be the owner of a one-sixth interest in: eight pieces of real property standing in the name of Sam P. Lung; and a one-sixth of:

"10. All assets claimed by Sam Lung, except personal effects, and all notes, bonds, cash and bank accounts in the name of Sam Lung, Sam P. Lung, Joe Lung Cafe, and Chinese Kitchen or claimed by Sam P. Lung.

"11. The interests conveyed and quit-claimed by John Lung in properties not otherwise herein mentioned by quitclaim deed to Sam P. Lung, Trustee, dated August 24, 1949, and recorded in Vol. 963 * * *."

together with all the rights of a cotenant to the extent of such one-sixth interest since the filing of this suit.

The judgment awarded a five-sixths interest in the house and lot conveyed to plaintiff by Dora Lung on September 22, 1945, to defendants and apparently one-sixth to plaintiff.

The judgment awarded Arthur Lung a recovery to the same extent awarded to plaintiff, and denied all relief not specifically granted.

The trial court's judgment did not recite the cancellation of the quitclaim deed. Presumably the trial court considered that the right to its cancellation was established by the evidence, and the parties here treat the judgment as cancelling it.

Plaintiff (Margarita Lung) Arthur Lung and Sam P. Lung have appealed. Arthur is here aligned with plaintiff and unless the context clearly shows otherwise will be so designated. Sam P. Lung will be referred to as defendant and the other parties will be referred to by their given names.

From the evidence it appears that when one of the Lung children married they were allowed to live in a house without the pay-

ment of rent. This custom was applied in favor of Jesse and his wife the plaintiff. Sometime after Jesse's death defendant advised plaintiff that she would have to pay rent or move. Plaintiff then consulted an attorney who wrote defendant a letter, this letter was not answered and a second letter was written. Defendant said he received the letters and understood them to mean that the attorney wanted an understanding with him as to what Jesse's interest was; that he did not write, go to see or telephone the attorney, and did not give plaintiff any understanding of the extent of Jesse's interest although he recognized that Jesse's interest was equal to the interest of the other six children. Defendant said that the only discussion he had with plaintiff was about the house and the payment of rent; that she said she did not think she should pay rent; that he asked her what she wanted and that she said "I want the house." He further said that after he received the letters he discussed the matter with his mother and said "After Mother saw that Margarita had gone to her lawyers, and through our discussions and all that we deeded her that house." He said that he told plaintiff "We are going to deed you the house" and told her to meet him at a designated attorney's office; that the attitude between them was friendly and had always been that way; that he knew plaintiff had confidence in him and that she was relying on him; that he never talked to her about Jesse's interest in the properties and that he knew that interest was the same as his; that if plaintiff had asked him he would not have advised her to accept the house in settlement of her interest; that if he had told her the extent of the property he did not think she would have accepted the house in settlement of her interest, and then said he knew she would not have done so.

At the appointed time plaintiff and defendant met at the attorney's office, the quitclaim deed was executed by plaintiff and a deed to the house and lot was delivered to her. The attorney who wrote the letters to plaintiff was not present and was not consulted. Plaintiff said she would not have signed the instrument if she had known it was a quitclaim deed and that she thought it was with reference to the house and lot being conveyed to her. Neither defendant nor the attorney who prepared the quitclaim deed would testify that plaintiff was told what the instrument was.

It is shown that defendant was in possession of full knowledge of the extent of property in which Jesse had an interest. He also knew that upon Jesse's death plaintiff, as his wife, succeeded to an interest, the extent of which was not known to her. The quitclaim deed was not executed upon a full disclosure as to the value of plaintiff's interest and there is no contention made that the parties were dealing at arm's length nor is it argued that the consideration passing to plaintiff was fair. Under the facts it was the duty of defendant to make a full disclosure to plaintiff of the facts which she was entitled to know and which were at the time within the knowledge of defendant. All the facts establish the existence of a fiduciary relationship between defendant and plaintiff and show that the quitclaim deed was not obtained as the result of a transaction made in good faith.

For all of these reasons the quitclaim deed must be held to be invalid. Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 120 A.L.R. 720; MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334; Warner v. Winn, 145 Tex. 302, 197 S.W.2d 338.

Limitation for the cancellation of the quitclaim deed because of fraud began to run from the time plaintiff discovered the fraud, or from the time that she had knowledge of facts sufficient to cause a reasonably prudent person to make such inquiry as would lead to a discovery of the fraud. Stroud v. Pechacek, Tex.Civ.App., 120 S.W. 626.

The evidence shows that plaintiff, until a short time prior to filing this suit, did not know the effect of the instrument she had signed. She said if she had she would not have signed it and defendant's testimony is to that effect.

There is nothing in the evidence to show she was put on inquiry until a short time before she filed this suit. The only evidence of any circumstance putting plaintiff on in-

quiry was given by defendant who said that about six months before this suit was filed and after he had been sued by Arthur Lung, plaintiff came to him and asked him if there was any danger of her house being taken away from her and that he advised her there was not.

We hold that plaintiff's right to cancel the quitclaim deed was not barred at the time her suit was filed.

Defendant complains of the trial court's refusal to submit his requested issues inquiring if "plaintiff learned any material facts between the execution of the release" and the "filing of this suit"; if she would have signed the release if she had known such material facts; if she knew she was signing a release at the time she signed it; and if she knew the effect of the instrument at the time she signed it.

What we have already said is sufficient to show that the evidence would not support any finding on these requested issues inconsistent with the trial court's judgment, and his refusal to submit the issues was not error.

Defendant says that there is no evidence, or insufficient evidence, to support the jury findings that Dora, Inez and Annie made gifts of their interest in the Joe Lung Cafe to the seven children who worked there.

Inez and Annie were parties to the cause, they did not testify and have not appealed from the judgment. Defendant in his capacity as executor of the estate of Dora Lung, deceased, was a party to the cause but has not appealed from the judgment in that capacity. However it is apparent that if the findings as to gifts are given effect they will increase the interest of plaintiff and others in the cafe after January 1, 1936.

The proportion of defendant's liability, if any, to plaintiff and others individually will be increased but his total liability to others is decreased. This is true because by the gifts he acquired a greater interest in the cafe than he had previously owned, and although his proportionate liability to others may have changed his total liability was not increased. Even though plaintiff had the burden of proving by a preponderance of the evidence that the gifts were made by Dora, Inez and Annie, defendant individually is not in position to complain for them. The gifts inured to his benefit and not to his injury for which reason he cannot here complain. 3–B Tex.Jur. p. 303, Sec. 882.

Defendant as manager of the Joe Lung Cafe had the complete charge of that business and its profits. He said that he could not dispute the accounts of auditors which showed that his withdrawals for his real estate account, for his personal account and his Chinese Kitchen account exceeded by many thousands of dollars the withdrawals for Jesse's account. He never told Jesse how much money was on hand and Jesse never asked him. In handling the funds from the cafe he recognized Jesse's interest but never made an accounting to him, never consulted him about withdrawals, never told him from what account he was paying for real estate purchased by him and as far as Jesse knew he might have drawn the money from his personal account. He admitted his accounts were not kept in such manner as to enable him to tell what Jesse's wealth was.

Auditors testified and various exhibits of accounts were introduced in evidence. The testimony of the auditors shows that the funds were commingled and they were unable to identify what property was defendant's. Defendant himself was unable to do so, or to dispute the correctness of the auditor's accounts.

It cannot be seriously contended that there was not a commingling of the cafe funds with the funds of defendant, but the question is: Upon whom does the burden of tracing these funds rest?

The general rule is stated in Logan v. Logan, 138 Tex. 40, 156 S.W.2d 507, 510, to be:

First:

"It is a general rule that where a trustee wrongfully mixes trust funds of an indeterminable amount with his own private funds, the burden is on him to distinguish his funds and the amount thereof from those of the cestui que trust; and if he cannot do so the whole commingled fund, or the prop-

erty purchased therewith, becomes subject to a trust in favor of the cestui que trust. (Authorities cited.)

"The rule is analogous to that of confusion of goods. Andrews v. Brown, supra [Tex.Com.App., 10 S.W.2d 707]. It is a harsh one, but is justified by the wrongful conduct of the trustee. The emphasis is on the injustice of requiring an innocent beneficiary to distinguish and trace the trust funds when the commingling was occasioned by the wrongful act of the trustee. It is expressed in Andrews v. Brown, supra (10 S.W.2d 709), as follows: 'The principle, we apprehend, is but a part of equity's declination to extricate the wrongdoer from self-imposed hard conditions, or to tax the innocent, where one of two not in pari delicto must suffer.' "

Second:

"On the other hand, there are authorities which hold that if the commingling is done rightfully, and with the consent of the beneficiary, the basis for the rule is removed, and no presumption is raised that the entire fund, or property purchased therewith, is subject to the trust; and consequently the burden remains on the plaintiff to trace the trust funds into the specific property and to show the amount thereof as one of the essential elements of his case." (Authorities cited.)

The commingling of the funds was done by defendant who said Jesse was not consulted and had no knowledge of how the funds were being handled.

In his management of the cafe and in handling the profits of that business defendant had the confidence of his brothers and sisters and he himself said that he recognized their respective interest. Even though they consented to his handling the funds defendant himself does not say such consent was for him to use the funds for his own benefit and to their prejudice.

In the absence of evidence tending to show that Jesse had knowledge of defendant's commingling cafe profits with defendant's own funds and using the same for the purchase of property in his own name (defendant said Jesse had no such knowledge), we think it must be said it was done without Jesse's consent—express or implied. Defendant, in this suit, refuses to recognize Jesse's interest in the property purchased but said that he always recognized his interest in the cafe profits. These profits were commingled with defendant's own funds and used by him in the purchase of properties in his own name. For these reasons we think it cannot be said the commingling was rightful, for which reasons the burden was on defendant to trace the funds. Logan v. Logan, supra; Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493.

To show consent on the part of Jesse, defendant directs our attention to excerpts from plaintiff's testimony, part of which was given by deposition:

"Q. And whatever Sam did with the money that came in suited them (the other children) all right, did it? A. Yes.

"Q. And it was done with their consent? A. They leave it to Sam.

"Q. Anything Sam did was all right? A. Yes.

\* \* \* \* \* \*

"Q. And that is the truth of the matter, isn't it?—That testimony is correct, isn't it? A. I guess so.

\* \* \* \* \* \*

"Q. Now, then, Mrs. Lung, the children had entire confidence in what Sam was doing down there, didn't they? A. That is right.

"Q. Jesse had it? A. Jesse always trusted Sam.

"Q. And that was true of the other children? A. Just like you trust your own self."

The first excerpt from plaintiff's testimony was given by her in her deposition. On the trial she said she gave the answers but said she did not know whether it was all right or not. "Me and Jesse never talked over things like that. It was just a mistake like anybody else could make a mistake." She was further pressed as to whether or not she gave the answers in her deposition and said "I don't think I answered it right, because Jesse and me never talked much how Sam handled the money was alright." She was further

pressed as to her answers given in the deposition and gave the testimony set out in the second excerpt. The testimony set out in the third excerpt was given prior to that set out in the first and second and following such testimony (third excerpt) were questions and answers relative to defendant hiring and firing employees at the cafe, fixing food prices and handling the money and she said "Sam was taking care of everything."

■ In view of defendant's testimony we think plaintiff's testimony did not raise the issue of Jesse's consent to the commingling of funds and that the trial court did not err in refusing to submit defendant's requested issue to that effect.

Defendant's points 36 to 47 both inclusive complain of the refusal of the trial court to submit his requested issues inquiring as to whether any of the cafe funds were used in the purchase of specific pieces of property and whether or not such funds were so used with the consent of the owners of the funds.

Commingled funds were used in the purchase of the several pieces of property. We have held the commingling of the funds was without the consent of Jesse; that the burden was on defendant to trace such funds, and for these reasons it was not error to refuse the submission of these issues.

Defendant says that Arthur Lung is judicially estopped to recover in this cause for the reason that he permitted the rendition of a judgment in a divorce suit filed against him adjudging that "there is no community property."

It is shown that Arthur Lung was married in 1929; that thereafter he and his wife adopted a girl, Billie Jo Lung; that his wife sued him for divorce in 1945, and alleged that "there is no community property. to be divided by this Court"; that Arthur Lung filed a waiver, and that a divorce was granted plaintiff on her petition, awarded the custody of the minor to plaintiff and adjudged "there is no community property." The plaintiff to that suit has since died.

■ Defendant was not a party to and was not bound by the divorce judgment. The estoppel of the judgment is not mutual. "A party who is not bound by a judgment is not permitted to assert that another is estopped by it." Davis v. First Nat. Bank of Waco, 139 Tex. 36, 161 S.W.2d 467, 473, 144 A.L.R. 1.

Billie Jo Lung, a minor, intervened in the present cause by her next friend and attorney. She alleged:

"That she is the adopted daughter of defendant, Arthur Lung, and as such is entitled to a pro rata share of the properties here involved; that a controversy exists between herself and the said Arthur Lung as to the nature of her interest.

"Wherefore, she prays that the Court determine and adjudicate the nature and extent of her property rights, if any, in the properties involved in this lawsuit."

The trial court adjudged that she take nothing as against any of the defendants or as against the plaintiff. Although she gave notice of appeal from the trial court's judgment her appeal has not been perfected.

Defendant says the trial court erred in failing to award Billie Jo any interest in Arthur's portion of the property in controversy here—on the theory that such portion was community property of Arthur and his divorced and now deceased wife and that Billie Jo was entitled to recover as the heirs of her deceased mother.

There was no attack made on the judgment rendered in the divorce suit, and the record does not show that the judgment there rendered was not proper because of a settlement of property rights between the parties or upon a full hearing.

The minor could appear in this cause by her next friend and be bound by the judgment rendered. Rule 44, Texas Rules of Civil Procedure. It is not shown that the next friend has waived or admitted away any substantial rights of the minor, or that he has consented to anything prejudical to her rights.

In Cannon v. Hemphill, 7 Tex. 184, 201, the court said:

"* * * if the next friend does not lay his case properly before the Court, by collusion, neglect, or mistake, a new bill may be brought on behalf of the infant. * * *"

This statement was quoted with approval in Henderson v. Shell Oil Co., 143 Tex. 142, 182 S.W.2d 994. See also Greathouse v. Fort Worth & Denver City Ry. Co., Tex.Com.App., 65 S.W.2d 762.

We think that the interest of the minor in the subject matter of this suit is not shown to be such interest as to require our further consideration.

The business of the Joe Lung Cafe was conducted as a partnership with the defendant as the managing partner. That business was not concluded upon Jesse's death but the operation was continued until 1950, when the cafe was closed and the furniture, fixtures and equipment were kept on hand for sale. No sale has been consummated and no accounting by the partners has been had. Defendant said he recognized the interests of his brothers and sisters in the cafe and did not claim its money as his own. We hold plaintiff's suit was not barred by the four year statute of limitation. 32 Tex.Jur., Sec. 212, pp. 543–545.

Plaintiff complains of the jury's answers to special issues seven and eight which issues and answers are:

"Special Issue No. 7:

"Do you find from a preponderance of the evidence that the real estate, bonds, cash, and other assets in the name of Dora Lung at the time of her death, excepting only the real estate purchased prior to the death of Joe Lung, were placed in her name to be held by her for the benefit of the owners of the Joe Lung Cafe?

"Answer 'Yes' or 'No'.

"Answer: No.

"Special Issue No. 8:

"Do you find from a preponderance of the evidence that the cash in the name of Dora Lung and the profits, if any, from the Joe Lung Cafe, used for the purchase of real estate, bonds and other assets in the name of Dora Lung, after the death of Joe Lung, were intended by the owners of the Joe Lung Cafe as a gift to Mrs. Dora Lung?

"Answer 'Yes' or 'No'.

"Answer: Yes."

Plaintiff says that notwithstanding the jury's answers to these issues the trial court erred in not awarding her a recovery of an undivided interest in the properties standing in the name of Dora Lung.

The evidence shows that profits from the Joe Lung Cafe were deposited to the account of Dora Lung and that these profits were used by her in the purchase of property in her own name. We think our inquiry is limited to the question of a gift of such profits. In our reference to the evidence we will not refer to contradicting statements of the witnesses as such were for the jury to consider. As explanatory of the understanding and practice of the interested parties the following statement made by defendant in answer to the question of what interest his mother had at the time Jesse died is relevant: "* * * She had whatever amount of interest she wanted, because I told you in the beginning of this testimony that a family like ours, we put everything in mother's name" and he further said it was for her to do with as she wanted to. Speaking of his father's death he said: "Father died without a will. It all went to mother and us children just operated it on." When asked if the children considered that they each had an equal interest in the cafe funds he said: "We never did think of it in terms like that." When the law of descent and distribution was explained to him he said: "I was just telling you how our family operated." And said he was not aware of what the law was and repeatedly testified that the children recognized everything that his mother had as belonging to her to dispose of as she saw fit. Charlie Lung said that the earnings from the cafe would belong to his mother "and anything we needed we'd get from her." The other Lung children who testified gave similar testimony.

We think there is some evidence to show that the Lung children in depositing funds to the credit of their mother intended to thereby divest themselves of the title, dominion and control of such funds and had the intent to vest such title, dominion and control in the mother without any reservation of rights to themselves. Their testimony disputes any other conclusion. For these reasons a gift of such funds was shown. Harmon v. Schmitz, Tex.Com. App., 39 S.W.2d 587.

After Jesse's death $40,000 was transferred from defendant's American National Bank account to Dora's account. Defendant said he did not ask any of the children for permission to do this. This transfer of funds was not discussed with plaintiff, she knew nothing about it, and there is nothing to show that she was ever a party to any family understanding, ever consented to a transfer of her funds or ever made a gift thereof to Dora.

Upon Jesse's death his interest in the Joe Lung Cafe and its profits passed to plaintiff and in the absence of a showing that she divested herself of such interest she is entitled to recover it.

In his brief defendant says:

"As a matter of fact, however, the transfer of the $40,000.00 to which plaintiff refers was made in two deposits of $20,000.00 each, only the first of which could possibly be involved here. The first transfer of $20,000.00 was made on September 22, 1947. In finding that this transfer was intended as a gift to Dora Lung the jury doubtless considered that the transfer had been previously authorized by the children in view of the apparent condition on which Mrs. Lung had given her interest in the cafe to them—that surplus income be given to her.

"The second transfer of $20,000.00 after the death of Jesse Lung could have no conceivable part in this case because in the meantime plaintiff had quitclaimed her interest in the funds on December 22, 1945. * * * It is true, of course, that if she had sued for an accounting and if she had succeeded in setting the release aside and if she was not barred by limitation she would then have been entitled to an accounting and settlement as of the date of her husband's death. There is no question however, that her release and quitclaim deed justified the second $20,000.00 transfer."

■ We hold plaintiff has shown herself entitled to a one-seventh interest in said $40,000.

■ We think the trial court did not err in awarding plaintiff (Margarita and Arthur) an interest in property instead of a lien to secure payment to them of sums of money commingled. The defendant and the auditors were unable to advise the trial court with any degree of certainty as to the exact amount of funds commingled with defendants' and thereby afford a yardstick for measuring and fixing the lien. In this state of the record the rules announced in Eaton v. Husted, Logan v. Logan, both supra, and Andrews v. Brown, Tex.Com. App., 10 S.W.2d 707, are applicable.

Defendant complains that plaintiff was not required to return the consideration she received for the quitclaim deed. In her pleadings plaintiff offered to return the consideration or to have it credited on her recovery. The deed to the house and lot was cancelled but plaintiff was awarded a one-sixth interest in the same. It is undisputed that this house and lot belonged to Dora and under the jury's finding (Issue 8, supra) we are unable to justify the award of this interest to plaintiff. Plaintiff in any event was entitled to the government bonds. The proceeds of the insurance policy was payable to Dora and should have been returned to her estate or credited on plaintiff's recovery. Our attention has not been directed to any evidence showing the amount of rents and revenues received for, or earned by, the use of the house but there is some evidence as to improvements made to the property during Jesse's lifetime. Under this state of the record we are not in position to say the trial court should have required plaintiff to account for rents and revenues.

Upon the death of Joe Lung in 1926, the Joe Lung Cafe and such other property as he then owned passed one-half to his wife, Dora, and one-half to the nine children—one-eighteenth to each. Excluding gifts above considered no change in the ownership of the property came until January 1, 1936, when Dora, Inez and Annie gave their respective interests in the cafe to the seven children working there. Jesse died in 1945, and his interest passed to plaintiff. The next change of ownership came upon the death of Dora in 1947, when by her will she left her property to her eight living children—Arthur was one of the living children but plaintiff, Margarita, took no interest under the will. On August 24, 1949 (after the death of Jim whose interest passed to Jimmie Joe), John quitclaimed to defendant as trustee for named individuals all of his interest and claims to seventeen items of property—Arthur was named but Margarita was not. Quitclaim deed, supra. At the time this deed was executed John had a one-seventh interest in the Joe Lung Cafe and by Dora's will a one-eighth interest in her estate. By the terms of this deed Margarita's interest was not increased but Arthur's was. However, apparently because of this deed, and it is so argued in her brief, the trial court's judgment awarded Margarita a recovery of an undivided one-sixth interest in the several items of property there described,—the Joe Lung Cafe being one.

John was the owner of a one-seventh interest in the Joe Lung Cafe and the profits of that business. He also took a one-eighth interest of Dora's property under the terms of her will. These interests being his he was free to convey them to such persons as he might elect, and by his quitclaim deed did convey such interests to persons other than plaintiff.

Plaintiff says that any consideration paid to John by defendant as trustee was paid out of commingled funds and that the property therefore had the same status as any other property standing in the name of defendant. She directs our attention to testimony showing that defendant handled John's money and negotiated his purchase and sale of real estate, but there is no showing that the money so used belonged to any person other than John and such testimony does not show that commingled funds were paid to John as the consideration for the quitclaim deed,—the recitals in the instrument suggest the consideration was paid from Dora's estate. This being true plaintiff had no interest in the property conveyed and did not take under the deed. However, if we are mistaken in our analysis of the testimony, issues on this phase of the case were not requested, none were given and no complaint was made of such failure. In this state of the record we hold it was error for the trial court to award Margarita a recovery of any interest in the property described in said deed. Her recovery should have been limited to an undivided one-seventh interest in the properties described in the judgment but as later herein limited or excluded.

Item (2) of the judgment describes a tract of land shown to have been acquired July 10, 1935, at that time the interest of Jesse and Arthur was not greater than one-eighteenth each and in the absence of a showing (which we do not find) the recovery as to this property must be limited to an equal undivided one-eighteenth to each. Also, there must be eliminated from item (10) supra, any notes, bonds, cash and bank accounts received by defendant under the will of Dora—we understand from the record that her estate has been partially distributed.

Further, Margarita (but not Arthur) must be denied recovery of any interest in the property described in item (11), supra. As to this property Arthur's interest is by the deed from John and not otherwise.

The judgment of the trial court is here reformed so as to award Margarita and Arthur each recovery of an equal undivided one-eighteenth interest in the tract of land described in item (2) of the judgment; an equal undivided one-seventh interest in the properties described in items (1), (3), (4), (5), (6), (7), (8), (9) and (10) except assets, notes, bonds, cash and bank accounts received by defendant under the will of Dora, and $5,714.28 (⅐th of $40,000). And further that Margarita recover none of the interest in properties conveyed by John to

defendant as trustee; that she recover no interest in the house and lot deeded to her by Dora as a part of the consideration for her quitclaim deed dated December 22, 1945 and that her recovery herein be charged with $1,109.61, same being money paid to her by Dora as a part of the consideration for the said quitclaim deed.

The costs of appeal are taxed against Margarita and Arthur jointly, but we see no reason to disturb the judgment of the trial court taxing the costs in that court against defendant.

As reformed the judgment of the trial court is affirmed.

Reformed and affirmed.